### EDWARD SALZMAN *v.* HIS CREDITORS.

Where property, subject to a special mortgage, does not sell for enough to satisfy the mortgage, the mortgagee becomes an ordinary creditor for the difference ; and if there be nothing for such creditors, he must lose the surplus.

The owners of notes executed each for a portion of the price of property, and secured by the same mortgage, are entitled to be paid out of the proceeds of the property, in proportion to the amount of the notes owned by them respectively.

Where the holder of a claim secured by mortgage, assigns a part of it, he cannot come in competition with his assignee, if the property prove insufficient to pay both. Though he warrant only the existence of the debt at the time of the transfer, it would be contrary to good faith, to permit him, after receiving the price from his assignee, to prevent the latter from recovering the amount paid by him.

THE syndic of the creditors of Salzman, and S. T. Hobson & Co. are appellants from a judgment of the District Court of the First District, *Buchanan*, J., on certain oppositions to a provisional tableau of distribution filed by the former.

MORPHY, J. This case comes before us on several oppositions to a tableau of distribution filed by the syndic. We shall examine them, in the order in which they have been passed upon by the judgment appealed from.

I. The claim of Louisa Ann Salzman, the insolvent's wife, for $2100, which she alleges was received by her husband, appears to us unsupported by sufficient evidence. It was attempted to be proved by her sister, who, it is evident, knew nothing of her own personal knowledge. She gives as the reason of her belief that Louisa A. Salzman had at the time of her marriage, and placed in the hands of the insolvent from $1900 to $2000, that for several years preceding, her expenses did not equal her receipts from her profession as an actress, that she had saved that amount from her earnings, and that when she left New Orleans, in May, 1839, to join her mother in England, she had not the means of defraying her expenses home. It is shown, moreover, that the witness arrived in this country more than six months after the marriage of her sister.

II. The next opposition is that of Lucy Ann Caldwell. She alleges that she has a special mortgage and vendor's privilege on two lots of ground surrendered by the insolvent, which were sold for $2700 cash, a sum insufficient to satisfy her claim ; that, con-

sequently, the whole proceeds of the sale belong to her, but that by the tableau she is made to contribute, as a second mortgage and judgment creditor, a sum of $364 59, to pay a balance of $10,747 59 due to other mortgage claims; and that according to the tableau, this contribution, if due at all, is due only by second mortgage and judgment creditors, while she has a first mortgage and a vendor's privilege.

Had a general opposition been made to this tableau, we should have had no hesitation in rejecting and setting it aside *in toto*, as unintelligible and made in violation of every principle of law; but, inasmuch as it has been homologated such as it is, and so far as not opposed, we must confine our examination of it to the particular oppositions before us. The contribution, which is resisted by L. A. Caldwell, appears to be charged, if we are to judge from the words of the tableau, to pay certain deficiencies on special mortgages amounting to $11,870 72. It seems that at the syndic's sale, most of the creditors having mortgages, bought the property subject to their mortgages for less than the amounts due to them. The syndic appears to have thrown together the deficiencies on the special mortgages of the creditors who had not become purchasers of the mortgaged property, and has made L. A. Caldwell, and the other purchasers debtors for a proportion of such deficiences according to their purchases. If such be the meaning of the tableau, nothing can be imagined more illegal or unreasonable. It is clear that if property specially mortgaged be sold for an amount insufficient to pay the mortgage, the holder of such mortgage becomes an ordinary creditor for the difference, and that if there be nothing coming to the ordinary creditor, he must lose the surplus of his claim. The counsel for the syndic has admitted the tableau to be a most awkward one, and has offered an explanation of it, which does not render it much more intelligible. Such as it is, Lucy Ann Caldwell is called upon to pay a contribution, as a second mortgage and judgment creditor. Her claim does not fall within the class which, according to the syndic's showing, ought to support the contribution. Having a vendor's privilege on the lots bought by her, she had a right to be paid first out of their proceeds, and was surely liable to no contribution for the payment of persons having special mortgages on other property.

III. The remaining opposition is that of Jacob Barker. He is the holder of two notes, given by the insolvent to Hagan, Niven & Co., for the two first instalments of a house and lot sold to the insolvent by the latter for the price of $7322 23, and secured by special mortgage on the property sold. He alleges that he purchased the property at the syndic's sale for a sum less than the amount of his mortgage, after deducting a prior mortgage of $2045, and that he is entitled to the balance of the price in preference to S. T. Hobson & Co., who are the holders of the third note given for the same property, because this note has not been legally and absolutely transferred to them ; and, moreover, because the debt has been seized in execution at his suit. This opponent urges the same objections as L. A. Caldwell, against the contribution demanded of him to pay deficiencies upon other mortgages.

If the third note held by Hobson & Co. belonged to them, they would undoubtedly be entitled to the proportion allowed them by the tableau of the proceeds of the property sold, the three notes being portions of the same price, and being secured by the same mortgage. 2 La. 455. But the evidence shows that it is yet the property of Hagan, Niven & Co., by whom it was, with other notes, handed over to Hobson & Co., in order that they might receive the proceeds, and apply them to a judgment which they hold against Hagan, Niven & Co., for about $7000. Hobson & Co. being aware that this arrangement did not amount to a pledge under our laws, and gave them no rights with regard to third persons, had this note seized in their own hands under the two judgments they held against Hagan, Niven & Co. Giving every possible effect to this seizure, it is clear that it could vest in Hobson & Co. no greater rights than those which Hagan, Niven & Co. had themselves in the note. As vendors of the property, they were originally holders of the three notes of the insolvent, secured by mortgage. They endorsed and negotiated the two first notes, now held by Barker, and retained the one which they afterwards placed as collateral security in the hands of Hobson & Co. When the holder of a claim, secured by mortgage, assigns a part of it, he cannot be permitted to come in competition with his assignee, if the pledge is insufficient to pay both ; although he warrants only the existence of the debt at the time of the transfer, yet

it would be contrary to good faith, that the vendor of a claim, after receiving the price of it from the assignee, should, by his own act, prevent the latter from recovering the sum he has paid. Troplong, Des Privilèges, et Hypothèques, v. 1, No. 367. Grenier, v. 1, No. 93. The present case is much stronger than that of an ordinary transfer of a debt, because Hagan, Niven & Co., by endorsing the two notes, have guarantied the claim assigned, and become liable *in solido* for its payment to Barker.

It is therefore ordered that the judgment of the District Court be affirmed with costs, as relates to the oppositions of Lucy Ann Caldwell and Barker, and reversed as relates to that of Louisa Ann Salzman, which is hereby dismissed, the cost of this last opposition to be borne by her in both courts.

*Micou* and *Benjamin*, for the appellants.

*S. L. Johnson*, and *Barker*, for the appellees.