## No. 5159.

### Charles T. Howard vs. William B. Schmidt.

A creditor can not annul a judicial sale of his debtor's property, (made at the instance of another creditor) on account of any informality in the proceedings affecting the sale, unless he proves that such informality has caused him an injury.

By appointing an appraiser, the debtor cures any defect in the advertisement of a judicial sale.

Where a party sells *one* of a series of notes, secured by mortgage on certain property, without warranty, and reserving to any holder of any other of said notes equal rights, it will not debar him from subsequently proceeding on another of said notes, and subjecting said property to the ratable satisfaction of each of said notes.

A litigant is required to give parties in interest no other notice of his proceeding, than that prescribed by law.

APPEAL from the Fifth District Court for the parish of Orleans. *Cullom, J.*

*Joseph P. Hornor,* for plaintiff and appellee.

*H. J. & J. H. Grover,* for defendant.

The opinion of the court was delivered by

De Blanc, J. This suit was filed by plaintiff on the tenth of November, 1873. He alleges that Mrs. Mary Jane Borden and William B. Schmidt are, *in solido*, indebted unto him in the sum of four thousand dollars, with interest thereon at the rate of eight per cent, from the seventeenth of March, 1871, costs of protest, and attorney's fees.

9

As concerns Mrs. Borden, plaintiff's claim is predicated on a promissory note drawn to her own order, at the aforesaid date, by her indorsed and delivered to Schmidt as part of the purchase price of a lot of ground and the residence thereon, by him sold to the said Mrs. Borden, for sixteen thousand dollars, payable one-fourth cash, and the balance in three notes of each four thousand dollars, with interest from date.

The first of said notes matured on the seventeenth of March, 1872, was protested, and sued upon by Schmidt. Mrs. Borden filed no answer· to that suit, and, on the twenty-fourth of April, 1872, a judgment by default was entered against her. ·Three days after that default, by act passed before Andrew Hero, Jr., a notary public, defendant, Schmidt, transferred to plaintiff the note sued upon, the mortgage and privilege securing its payment, and his right of action in the suit filed by him against Mrs. Borden.

That transfer and subrogation was made "without any warranty whatever, and with the distinct understanding that said transfer and subrogation are not to impair or prejudice the rights under the second and third notes, or any holder thereof, or of either of said holders."

This clause derives considerable importance from the fact that, by its clear and imperative terms, Charles T. Howard was informed that the note then transferred to him was the first of a series of three notes drawn by the same party, secured by the same mortgage and privilege, and that it was so transferred without any warranty, and with the express stipulation that *any* holder of its twin sisters—not excluding, but including the assignor, at least by inference—would share equally with him in any future distribution of the proceeds of any sale which might be made of the mortgaged property.

As to third parties, that declaration was entirely useless; their right of preference, as against the assignor, would have existed without that declaration. Is it less, in substance and in terms, than an absolute reservation in favor of the assignor, one imposed and exacted by him, the object of which could hardly have been misunderstood by the assignee— one found in his own contract, which bears his signature, and which, either willingly, carelessly, or through necessity, he has accepted and assented to? That conclusion is irresistible. 2 R. R. 221; 21 An. 529, 624.

The second note matured on the seventeenth of March, 1873, and shared the fate of the first—it was not paid—and Schmidt proceeded thereon *via executiva*. The property subject to his vendor's mortgage and privilege was seized, advertised for sale, and sold by the sheriff on the twenty-eighth of May, 1873, under an appraisement partly made by. an expert selected by Mrs. Borden herself.

At that sale Schmidt became the adjudicatee of the property for eight, thousand dollars.

Paid the costs and taxes then due, and amounting to........$1757 40

And retained the balance of the price, to be applied as follows,
to wit: To State and city taxes already levied but not then
exigible ..................................................... 270 00

To the notes held by Charles T. Howard, the New Orleans, Mu-
tual Insurance Company, and the said Schmidt, each
$1990 86⅔, in all..................................... 5972 60

Total.................................................$8000 00

This application and proposed distribution of the proceeds of the sale
were made, and appear in the sheriff's return on the writ, and they have
been approved by all the interested parties except Mrs. Borden and
Charles T. Howard.

On the thirteenth of October, 1873, with a view of perfecting the title
by him acquired at the sheriff's sale, Schmidt published a monition, to
the granting of which, on the tenth and eleventh of November, 1873, the
plaintiff and Mrs. Borden objected, and mostly on the identical grounds
now urged in this suit and by plaintiff against Mrs. Borden and Schmidt.
In that opposition they pray that the sale from the sheriff to Schmidt be
avoided and annulled.

On the day he filed his opposition to the confirmation of the aforesaid
sale, Charles T. Howard brought a direct action against Schmidt and
Mrs. Borden, in which he charges that, on the fifteenth of April, 1873,
without notice to him, and without his knowledge, Schmidt proceeded on
the second of the notes subscribed by Mrs. Borden; that, in his proceed-
ing, he represented that the third of said notes remained unpaid, and
prayed that the property mortgaged to secure the balance due of the pur-
chase price of said property be sold on the following conditions: for cash
to satisfy the two matured notes, and, as to the third note, on a term cor-
responding with its maturity.

He complains that the writ of seizure and sale applied for and obtained
by defendant was issued on terms which are at variance with the order
of the court, and different from those fixed in said order, in this: that,
according to said writ, the purchaser was to assume payment of the third
and last of said notes, and pay on the spot the balance of the price of
adjudication; that Schmidt fraudulently concealed from him his intention
to proceed, for the purpose of acquiring said property for less than he
(Howard) would have given for it, and that, by his fraudulent course, said
Schmidt has made himself liable in solido with Mrs. Borden for the
amount of the note he holds.

There are, then, pending at this very hour, in this and the Fifth District
Court, two proceedings filed by Charles T. Howard, one in which he prays
for the annulling of the sale from the sheriff to Schmidt, and another in

which he claims that, by reason of his purchase, Schmidt has assumed payment of the note which he transferred without any warranty.   These pleas are inconsistent, as the former impugns and denies, the latter acknowledges and ratifies the title from the sheriff to Schmidt.

There are—not in Schmidt's petition against Mrs. Borden for a seizure and sale, not in the order of the court on that petition, but in the writ issued by the clerk and the advertisement published in the official paper— two slight errors, not calculated to in any way discourage bidders; one is, that the purchaser has to pay in cash the two, instead of one of the matured notes—that held by the seizing creditor—the other, that the purchaser was to assume payment of the third note, which meant that the purchaser would be bound to pay cash the amount of the note of the seizing creditor, that of Howard on demand, the third one at its maturity; but the purchaser would have had thus to pay and assume payment only in case the price offered would have been sufficient to satisfy the whole claim.

The rule that in judicial sales the prescribed formalities are to be strictly observed is rather for the benefit of the debtor and purchaser than the creditor.   By the appointment of an appraiser the debtor waives any defect in the advertisement.   This Mrs. Borden has done.   As to Howard, he has not shown any injury to him which resulted from the alleged informalty, and until he does the rule is inflexible, he can not annul the sale of his debtor's property.   11 R. R. 533; 5 An. 570; 9 An. 632.

Under the subrogation from defendant to him, plaintiff did not acquire; he renounced his right of action against defendant.   When and how, if at all, did that right accrue ?   From, he conceives, the sale of the sheriff, and particularly because Schmidt fraudulently, he says, acquired for a price ridiculously low the property for which, in his petition, plaintiff alleges he would have given more than Schmidt, and, in his evidence, for which he might have gone to ten thousand dollars.

What is the nature of plaintiff's action ?   It is not a third opposition, not an action in nullity, and, though it has some of its features, it is not the hypothecary action.   As regards Schmidt, it is not and can not be an action on the note.   If we except from plaintiff's pleadings two sentences, two allegations, one which precedes and the other contained in the prayer, his action against Schmidt would be one in damages, based on pretended frauds.   Those two sentences are, that in which he charges that, by reason of his purchase, defendant has assumed payment of his note, and that in which he asks for the recognition of his mortgage and privilege.

Defendant is evidently liable to plaintiff for a share of the proceeds of the sale of the twenty-eighth of May, 1873; that share has been established and informally tendered to plaintiff, who refused it, remarking that he intended to try and get all of it.   Has he, against Schmidt, and under

Howard vs. Schmidt.

the circumstances related, an action to recover more than he was offered? If he has, it is not under either the subrogation or the note. He so acknowledged himself, for when asked whether Schmidt was liable for the whole of the note, on account of the frauds he complained of, he answered, "That is one reason." "Any other," inquired defendant's counsel? "No," replied plaintiff.

The charge that defendant intended to defraud plaintiff is not sustained by the evidence; not even by the latter's unsworn allegations, and it is repelled by the very acts with which he is reproached, and by every presumption that can be legally invoked. He applied to a court of justice; from that court he obtained an order to which he was entitled, which no judge could have refused to grant. Under that order a writ was issued, placed in the hands of a public officer, a seizure was effected by that officer, the sale of the seized property was advertised in the official journal, and made at the usual place. Howsoever intimate the relations of interested parties may be, the law requires no other notice than that which was given. Besides, when was defendant himself informed that the sale was to be made? On the day which preceded that sale. To his attorney, who had imparted that information, he said, "I am glad that you sent me that note, as otherwise I would have forgotten the property was to be sold." That remark does certainly not suggest the intention of perpetrating a fraud.

Plaintiff, in this matter, has a right; but is he pursuing the right he has and which, at first, was not denied, but recognized, by defendant? We believe not. His interest is imperiled, not by his or his adversary's fault, but by those fatal causes which have so reduced the value of property in our State, and in his anxiety and trouble he abandons that which he can justly claim, to claim that which can not be justly granted. Under two of the allegations of his petition we can fix his proportion in the proceeds of the sale made in May, 1873; under his evidence we could allow but damages.

The exception that plaintiff's pleadings disclose no cause of action has added to the difficulties of this branch of the controversy, and, but for the two allegations already cited, would have been maintained. We conclude that, in the interest of all the parties, the door should not be left open to any additional litigation between them. Plaintiff is entitled to the amount which was tendered to him. That amount is secured by the vendor's mortgage and privilege on the property purchased by defendant. 5 An. 306; 16 L. 170.

Plaintiff has referred us to the case of Ventress against his creditors, in which this court correctly decided "that when the holder of a claim secured by mortgage assigns a part of it, he can not be permitted to come in competition with his assignee, if the property mortgaged is

insufficient to pay the whole claim." 20 An. 359. Here we have the parties' contract, which expressly reserves in favor of any holder, whomsoever he may be, an equality of rights with Charles T. Howard, the assignee. That contract is their law. Under its sweeping terms no holder can be excluded; they are each entitled to an equal share of the proceeds of the sale.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court against William B. Schmidt be and it is hereby annulled, avoided, and reversed, and, proceeding to render such judgment as should have been rendered below, it is ordered, adjudged, and decreed that Charles T. Howard recover of William B. Schmidt the sum of $1990 86⅔, and that the vendor's mortgage and privilege, by which the payment of said amount is secured, be and they are hereby recognized as having taken effect and bearing since the twenty-second day of March, 1871, on the property purchased by said Schmidt on the twenty-eighth of May, 1873, at the sale then made of the same by the civil sheriff of the parish of Orleans.

It is lastly ordered, adjudged, and decreed that the costs of the lower court be paid by defendant, Schmidt, those of the appeal by Charles T. Howard.