Barkdull vs. Herwig and Smith.

---

No. 6254.

E. J. BARKDULL, TUTOR, VS. E. F. HERWIG AND MRS. C. SMITH.

A judgment can have no effect on the rights of those not parties to it, and who had
no notice of the legal proceedings which led up to the judgment. Thus a mort-
gage creditor may proceed in a district court against the mortgaged property,
without regard to the fact that the property had been sold under a judgment, to
which he was not a party, rendered by a parish court, in a suit brought after the
institution of the proceedings in the district court.

A mortgagee who transfers part of the mortgage debt to another, can not compete
with his transferee for the proceeds of the mortgaged property, where the
amount is not sufficient to satisfy both,

Where a suit involving conflicting liens and mortgages on certain property is in-
stituted in one court, and all persons in interest are made parties to the suit,
the subsequent institution of another' suit, in a different court, by two of the
parties is a fraud on justice, and will not divest the former court of jurisdiction
to determine all the issues between the parties, in respect of the mortgaged
property, without regard to any changes in the title or possession of the prop-
erty.

APPEAL from the Sixth Judicial District Court, parish of Tangipahoa.
Kemp, J.

Lewis E. Simonds for plaintiff and appellant.

McEnery, Ellis & Ellis and E. F. Russell for defendants and ap-
pellees.

The opinion of the court was delivered by

MARR, J.    Appellees were interested as partners in the " Pelican
Mills Wadding and Batting Factory."    Herwig borrowed a sum of
money from Barkdull, which belonged to Barkdull's minor son; and this
money was used for purchasing materials, machinery, etc., for the
factory.

In January, 1872, some sort of settlement was made between Her-
wig and Mrs. Smith, the result of which was that she was indebted to
him in the sum of $5191 19, for which she executed her two promissory
notes, of the same date, to her own order, and by her indorsed in
blank, both payable twelve months after date, one for $3500, the other
for $1691 19; secured by mortgage on the factory and the twenty acres
of land on which it stands.    Subsequently, about a month after, Her-
wig delivered the $3500 note to Barkdull, in payment of the borrowed
money. .

At the time this mortgage was granted there were two liens in favor
of mechanics resting on the property, and duly recorded, represented
by two promissory notes, one for $212 50, the other for $90 66, .signed
by Mrs. Smith, and the payment guaranteed by Herwig.    When Herwig
delivered the note to Barkdull, he represented to him that the property
mortgaged was amply sufficient to pay it and the other note for
$1691 19 which Herwig retained.

Barkdull asked him about the mechanics' liens, and called his attention to the fact that they were not mentioned in the mortgage. Herwig said the reason they were not mentioned in the mortgage was that "I have assumed them;" and he produced, and handed to Barkdull a statement in his own handwriting, showing that he had already paid $215, on account of these liens, leaving only $180 due: and he added that Mrs. Smith would not agree to sign the mortgage notes until " I guaranteed these payments of the mechanics' liens."

In July, 1873, Barkdull brought suit on the note, and to enforce the mortgage: and on the twelfth July, Herwig intervened setting up his mortgage note, and claiming also, that he had made advances to Barkdull to the extent of $570, which he was entitled to have paid by Barkdull, out of the proceeds of the note held by him. He prayed that plaintiff's mortgage be recognized, and that his own note, and the $570 due him by plaintiff be paid out of the proceeds of the sale of the mortgaged property.

In August, 1873, pending these proceedings, Herwig brought suit in the parish court against Mrs. Smith for the sum of $303 16, with interest, being the amount of the mechanics' lien debts assumed and guaranteed by him; and he prayed for judgment recognizing the lien and privilege by which these two debts were secured, and that the property be seized and sold to pay these demands, by preference, out of the proceeds. Mrs. Smith waived service, and the delays of law, and confessed judgment as prayed for: and on the same day judgment was entered accordingly. Execution issued on this judgment; the factory and ground were seized and sold by the sheriff, on the fourth October, 1873, and purchased by Herwig, for $1400, cash, something over two thirds of the appraised value. On the same day Herwig promised and obligated himself, in writing, to transfer the property to Mrs. Smith, "without recourse," for $1800, on her assuming whatever liabilities the property was subject to in his hands.

The sheriff's return shows that after satisfying the judgment in favor of Herwig, the $303 16 with interest and costs, which constituted the first recorded privilege, the balance was not sufficient to pay the remaining privilege and mortgage; that is, the mortgage granted to Herwig to secure the two notes, one held by Barkdull, the other by Herwig; and he therefore left the balance, $1018 95, in the hands of Herwig.

Barkdull's suit against Mrs. Smith, in which Herwig was intervenor, pended until fifteenth April, 1874, when, on motion of Herwig's attorney, judgment of nonsuit was entered on his intervention; and, on the same day, final judgment was rendered in favor of Barkdull, against Mrs. Smith, for the $3500, and interest, with recognition of his right of mort-

gage; and decreeing that the mortgaged property be seized and sold, and proceeds applied to the judgment.

Barkdull lived in New Orleans, some eighty miles from Amite City, the seat of justice of Tangipahoa parish, where the property was situated, and where Herwig and Mrs. Smith lived. The attorney who represented Herwig in the intervention brought the suit, and was the sole subscribing witness to Mrs. Smith's written confession and waiver, on which he obtained the judgment of the parish court; so that there was no occasion for the publicity which usually characterizes proceedings in court. The appearance of Herwig as intervenor, and his entire conduct in the business, have the aspect of a mere feint, specially designed to conceal the real formidable attack in the parish court, to delude Barkdull, and to induce him to believe that the entire contest would be in the district court, and that the rights of himself and Herwig respectively would be determined and settled in that court, in the suit in which they were both parties.

In June, 1875, this suit was brought to subject the mortgaged property to the judgment of fifteenth April, 1874, in favor of Barkdull. The petition charges that the proceedings in the parish court were fraudulent, collusive and simulated on the part of Herwig and Mrs. Smith, to defraud and defeat the rights of Barkdull: and the prayer is that the property be decreed to be subject to Barkdull's mortgage rights as recognized in the judgment of fifteenth April, 1874, in preference to the judgment in the parish court in favor of Herwig; and for all other proper decrees.

Herwig excepted that the petition contains two causes of action which are contrary to and exclusive of each other: 1: that in which the judicial sale and judgment under which defendant holds the title to the property are attacked as unreal and simulated : 2: that in which the judgment and rule are attacked as real, but in fraud of petitioner's rights: and he called upon plaintiff to elect which of these two causes of action he meant to proceed with.

This exception having been overruled by the court, Herwig excepted that plaintiff was without authority to stand in judgment herein. Should this be overruled, he excepted that the court was without jurisdiction *ratione materiæ* to entertain an action to annul the rule made in virtue of a judgment of the parish court: in the event of the overruling of this exception, he excepted that plaintiff alleges no putting in default, and no tender, and therefore exhibits no cause of action.

Should all these exceptions be overruled, he pleads that the judgment of the parish court and the rule of fourth October, 1873, were legal, real, and *bona fide*, in all respects: and he also sets up the prescription of six months and one year.

Mrs. Smith, made a party by supplemental petition, adopted Herwig's pleas and defenses. The exceptions were referred to and tried with the merits; and this appeal was taken from the judgment in favor of defendants, rejecting plaintiff's demands and dismissing his suit.

We think none of the exceptions in this case were well taken; and that the plea of prescription is not well founded. The suit is not brought to annul a judgment of the parish court, nor to have set aside, for fraud, a conveyance between the defendants by which the rights of plaintiff are prejudiced. The object is to subject to plaintiff's judgment and right of mortgage the property in question. So far as the judgment in the parish court is concerned, it must stand as between Herwig and Mrs. Smith: it is without effect as to plaintiff. The sale by the sheriff, and the adjudication to Herwig must stand as between Herwig and Mrs. Smith; but they do not affect the rights of plaintiff, who was no party to the proceedings, and was in no way notified of them.

Whatever right or title Mrs. Smith had in the property, it is divested, as between her and Herwig, except so far as Herwig may be bound by his written obligation to transfer the property to her.

It is settled, we think, that a mortgagee, who transfers part of the mortgage debt to another, can not compete with his transferee for the proceeds of the mortgaged property, where the amount is not sufficient to satisfy both. As this court said, in Seligman vs. His Creditors, in 2 Rob. 244: "It would be contrary to good faith, that the vendor of a claim, after receiving the price of it from the assignee, should by his own act prevent the latter from receiving the sum he has paid." See also Troplong, Hypothéques, volume 1, number 367.

Herwig was indebted to Barkdull, for a loan; and the money was used to enhance the value of the factory, by the purchase of machinery, etc. Herwig, in settling with his partner in the factory, Mrs. Smith, took from her a mortgage on this property; and he gave to Barkdull, in payment of this debt, one of the notes secured by that mortgage. He assured Barkdull that the property cost from fifteen to twenty thousand dollars, and was amply sufficient to pay both the notes. He quieted Barkdull's apprehensions about the mechanics' liens, by showing that the amount had been reduced to $180: that he had assumed the payment: that Mrs. Smith had refused to sign the mortgage notes until he had assumed the payment; and that this was the reason for not mentioning these lien debts in the act of mortgage.

The plain meaning, the effect of this is that Herwig guaranteed the sufficiency of the property; and that it was upon his representations that Barkdull took the note in payment of the debt that Herwig owed him.

After Herwig's statements that the lien debts had been reduced to

$180, and that he had assumed the payment of them, he could not, without the grossest fraud, set them up as incumbrances outranking the mortgage.

The suit which Barkdull brought against Mrs. Smith, and in which Herwig intervened and asserted his mortgage right, was a proceeding *in personam* so far as judgment against Mrs. Smith was concerned ; and *in rem* so far as it sought to have the mortgaged property seized and sold. The law had laid its hand upon this property, and all the parties having any pretension of right or claim to it were before the court, which was competent to adjust the respective claims, liens and priorities: and when Herwig and Mrs. Smith went into the parish court, pending that suit, and there undertook to withdraw the property from the control of the court which had acquired full and complete jurisdiction as to property and parties, they attempted to practice a fraud upon the administration of justice which no judicial tribunal will tolerate. Whatever the proceedings in the parish court may have effected, as between Herwig and Mrs. Smith, they did not divest the district court of its power and authority, nor relieve it of its solemn duty and obligation to pass upon definitively and to settle the rights of the parties with respect to the mortgaged property as, in its judgment, the law and the evidence required. The judgment ordering the mortgaged property to be seized and sold in satisfaction of plaintiff's debt, is a judgment *in rem*, the execution of which the other parties to that suit had no power to forestall or to defeat: and that judgment must be executed, according to its tenor and terms, without regard to any changes either in the title or possession of the property which may have occurred *pendente lite.*

The judgment appealed from is, therefore, annulled, avoided, and reversed: and, proceeding to render such judgment as the district court should have rendered, it is now ordered, adjudged, and decreed that the property described in the mortgage granted by Mrs. Clementine Smith to and in favor of Ernest F. Herwig, of date fifteenth January, 1872, as set forth and described in the judgment of the Sixth Judicial District Court in and for the parish of Tangipahoa, in the suit number 149 of the docket, rendered on the fifteenth of April, 1874, in favor of Enoch J. Barkdull, tutor of his minor son, Charles R. Barkdull, against Mrs. Clementine Smith, in which Ernest F. Herwig was intervenor, be decreed to be subject to seizure and sale, under and in virtue of that judgment, to pay and satisfy the said judgment by preference and priority over any right, title, claim, mortgage, lien, or privilege whatsoever, of or in favor of Ernest F. Herwig; and that the said Ernest F. Herwig and Mrs. Clementine Smith, defendants and appellees, be condemned, *in solido,* to pay the costs of this suit in this court and in the district court.