

## Wytheville.

### ROANOKE CITY v. BERKOWITZ.

#### JUNE 27TH, 1885.

1. EMINENT DOMAIN—*Municipal corporations—Condemnation of land.*— Report of commissioners to condemn land for municipal purposes will not be quashed on the ground that a commissioner appointed, at the instance of the municipality, was interested, where the record does not show that the municipality was ignorant that he was interested when so appointed. Ignorance of the attorney making motion for the appointment, is not evidence of the municipality's ignorance that the commissioner was interested. But if commissioner was interested and disqualified, and municipality was ignorant, report will not be quashed, if record shows that the damages assessed are not excessive.

2. IDEM—*Interest in land condemned.*—Corporations condemning land under Code 1873, chapter 56, section 11, must take and pay for the fee-simple, and not merely an easement, except it be a turnpike company.

3. CONSTITUTION—*Condemnation of fee-simple.*—This statute requiring the condemnation of the fee-simple is not repugnant to the constitution. And if it was, the municipality cannot be heard to deny the validity of the statute under which it has chosen to proceed.

4. MUNICIPAL CORPORATIONS—*Damages—Ordinance.*— Ordinance to which land-owner refused assent, allowing him to build across the drain to be cut through land proposed to be condemned for the purpose, cannot be considered in assessing the damages.

Error to judgment of hustings court of city of Roanoke, rendered July 9th, 1884, in certain proceedings therein had for the condemnation of certain land for municipal purposes, wherein said city was plaintiff, and W. F. Berkowitz was defendant.

The record shows that during the summer of 1883, said city,

then the town of Roanoke, by its council, undertook, for sanitary effects, to drain a portion of its area, and to straighten the course of a small stream. The town having become incorporated as the city of Roanoke, with a hustings court, at the June term, 1884, of said court, commissioners were appointed to condemn the land of said Berkowitz for said purpose, and to assess the damages. These commissioners made an alternative report: first, that if the city should be required to condemn the fee-simple of the land, then Berkowitz should have $1000 damages; second, that if the city should be required to condemn only the use of the land, then he should have only $200 damages. At the hearing on this report, the city moved to quash the same, on the ground that the damages awarded were excessive, and that C. Markley, one of the commissioners, was interested in the subject matter, The hustings court overruled the motion, and confirmed so much of the report as gave Berkowitz $1000 damages. To this judgment the city of Roanoke obtained from one of the judges of this court a writ of error and *supersedeas.*

*Penn & Cocke,* for the plaintiff in error.

*Waller R. Staples* and *Thos. W. Miller,* for the defendant in error.

LEWIS, P., delivered the opinion of the court.

The first assignment of error, which relates to the refusal of the hustings court to quash the commissioners' report on the alleged ground that Markley, one of the commissioners, was interested, and therefore disqualified to act as such commissioner, is not well taken. In the first place, the record shows he was appointed at the instance of the city itself; and it does not appear that if in point of fact he was interested as alleged, the fact was not known to the city at the time of his appointment.

And if known, then upon well settled principles, the objection now urged must be considered as having been waived.

The bill of exceptions, it is true, sets forth that "the acting attorney for the city, on whose suggestion the appointment was made, did not know at the time that either of the parties who were appointed commissioners had any interest in the matter, but that C. Markley has since informed him that he owns a lot of land through which the drain in question passes; that no damages have ever been paid him, and that his land has not been condemned." But this may be true, and yet it does not follow that the facts here relied on were not known to the city. For the corporation is represented by various officers and agents, all of whom except its "acting" attorney, for aught the record shows to the contrary, may have had knowledge of the facts of which it is said the latter was ignorant. Moreover, it does not appear that any proceedings are pending or contemplated for the condemnation of Markley's land, or that he is claiming compensation for the same, and *non constat* that he will.

But if it were conceded that he was disqualified, and that the facts from which such disqualification arose were not known to the city until after the report was returned, still the objection could not be sustained; for the evidence is entirely satisfactory to show that the sum reported is not excessive, and that the city has not been prejudiced. Indeed, it was admitted in the argument by the counsel for the city, that if the law be as contended for by the defendant in error as to the estate or interest to be condemned, the sum so reported is no more than a reasonable compensation for the land in question, including the damages sustained by the defendant in respect to the residue of his lots by reason of the construction of the proposed work.

And this brings us to the consideration of the next assignment of error, which is, that the hustings court erred in holding that in condemning the land, the fee, and not a mere easement, must be taken and paid for.

The decision of this question must be governed by the terms of the statute under which the proceeding was conducted. The right of eminent domain, which is defined to be the right on the part of the state to take or control the use of private property for the public benefit when public necessity demands it, is inherent in every sovereignty, and is inseparable from sovereignty, unless denied to it by its fundamental law. Vattel, book I, ch. 20; Cooley's Const. Lim. 523; *Kohl* v. *United States,* 91 U. S. 367. The right, however, must be exercised upon such terms, and in such manner, and for such public uses as the legislature may direct. 2 Kent's Com. 340; 2 Min. Insts. 22, and cases cited. The whole subject, from its nature, belongs exclusively to the legislative department of the government, subject to the limitation imposed by the constitution in respect to just compensation for the property taken; and, hence, all questions affecting the rights of the parties in a case like this, must be determined not with reference to the decisions of the courts of other states, based on the peculiar statutes of those states, but according to the provisions of our own statutes. Those provisions, so far as they relate to the question now before us, are plain and unambiguous. They are as follows: " The sum so ascertained [by the commissioners] to be a just compensation, may be paid to the persons entitled thereto, or into court. Upon such payment, the title to that part of the land for which such compensation is allowed, shall be absolutely vested in the company, county or town in fee-simple, except in the case of a turnpike company, where a sufficient right of way only for the purpose of such company shall be vested." Code 1873, ch. 56, sec. 11. It is difficult to see how language could be plainer, or less liable to misconstruction. The requirement is imperative that *the fee* shall be vested, except in the single case of a turnpike company, where an easement only is acquired; and the exception proves the universality of the rule which was intended to be prescribed.

Counsel, however, refer to certain other statutory provisions,

which, it is claimed, apply to the present case, and require a different determination of the question presented. Reference is made to the act of assembly, embodied in part in section 13, of chapter 120, of the Code of 1873, which enacts, as follows: "Any person desiring to drain his lands through the lands of others, may apply to the court of the county or corporation in which the whole or a part of the last mentioned lands may lie, for the appointment of commissioners to ascertain and report upon the propriety of granting said application, and the damages that may be sustained by the party or parties through whose lands the said drain is proposed to be run; of which application notice shall be given," etc. But it is obvious that this statute has no application to the case before us, and that it applies only to those cases in which the applicant is the owner of the land sought to be drained, which is not the present case. Here the object was not to drain land belonging to the city, but to construct a drain as a sanitary measure for the public benefit.

Moreover, as is manifest from the terms of the statute, it is left to the discretion of the court as to whether the application shall be entertained, and the proceedings set on foot which are authorized by the act. For by the following section (14) it is enacted that "if the court, on hearing the matter, *thinks it proper*, it shall issue its order appointing five commissioners, who shall * * * ascertain and report what damages, if any, may be sustained," etc.; whereas section 6 of chapter 56 of the Code, under which the present proceeding was instituted, enacts as follows: " If the president and directors of a company incorporated for a work of internal improvement, the court of a county, or the council of a town, cannot agree on the terms of purchase with those entitled to lands wanted for the purposes of the company, county or town, five disinterested *freeholders shall* be appointed by the court of the county or corporation in which such land, or the greater part thereof, shall lie (any three of whom may act), for the purpose of ascertaining a just compensation for such land." And then follow directions as to the

steps to be taken to ascertain a just compensation for the land, that is, its fee-simple value, except that, as we have seen, a right of way only is acquired where the land is wanted for the purposes of a turnpike company.

Nor is the case affected by anything contained in section 31, of chapter 54, of the Code, which enacts that "in addition to the powers conferred by other general statutes, the council or board of trustees of any town shall have power to * * * prevent injury or annoyance from anything dangerous, offensive or unhealthy, and cause any nuisance to be abated."

Reference is also made to the charter of the town, which, among other things, provides as follows: "The council of the said town shall have all the general powers vested in it by the laws of this state, and, in addition thereto, shall have the following powers: First. To purchase, hold, sell and convey all real and personal property necessary for the purposes of the corporation," etc. And again: "Whenever any new street shall be laid out, graded or paved, a culvert built, or any other public improvement whatever made, the town council may determine what portion, if any, of the expense thereof should be paid from corporation funds, and what portion by the owners of real estate benefited thereby." Acts 1881–82, p. 52, *et seq.* But it is equally plain that these provisions of the charter have no bearing on the present case. They simply give authority to the town to purchase and hold property for the purposes of the corporation, and to make, and to provide for defraying the expense of, all public improvements. They authorize the town to purchase property, but not to condemn it. If, therefore, it cannot acquire such real estate as is wanted for its purposes by contract with the owner or owners thereof, then, under the general statute relating to the condemnation of private property, it may resort to the proper court and acquire it in the mode prescribed by the act. And that is precisely what it has done in the present case.

It may be, and doubtless the fact is, that the use of the land

in question would be ample for the purposes which the city had in view; and undoubtedly the legislature might have provided in such cases for the condemnation of the use only, but it has not seen fit to do so. On the contrary, it has enacted, in terms too plain to be misunderstood, that the fee shall be taken; and by this requirement of the statute the courts must be governed in all cases arising under it. *Pitzer* v. *Williams*, 2 Rob. 241.

Nor is the objection well founded that the statute, as we have interpreted it, is repugnant to the constitution. If by virtue of the right of eminent domain, which, according to Vattel, is the right of disposing, in case of necessity and for the public safety, of all the wealth contained in the state, it is competent for the legislature to authorize the condemnation of private property at all, it is difficult to see why it may not require the fee to be taken as well as the use merely. The constitution imposes no other limitation on the power of the legislature in this particular than that contained in the clause which forbids the taking of private property for public use without just compensation; and the authorities all agree that under a general statute, like the one in question, no more can be rightfully taken, without the owner's consent, than the necessity of the case requires. Thus, where a part only of a man's land is needed for a court-house or other public purpose, the necessity for the appropriation of that part will not justify the taking of the whole against his will, even though compensation be made therefor. For the right of eminent domain being based on necessity, cannot be broader than the necessity which supports it. But the case is widely different where a corporation, other than a turnpike company, seeks to have lands condemned and to acquire the use only, when the owner demands that the fee be taken. Manifestly it has no right to claim a conjoint occupation of the property, for it might often happen that such appropriation would virtually deprive the owner of the beneficial enjoyment of his property altogether. And it was doubtless for this reason that the legislature was careful to require the fee to be

taken and paid for where land is condemned for the purposes of a city or town.

"As a general rule," says an eminent writer, " the laws for the exercise of the right of eminent domain do not assume to go further than to appropriate the use, and the title in fee still remains in the original owner. It seems, however, to be competent for the state to appropriate the title to the land in fee, and so to altogether exclude any use by the former owner, except that which every individual citizen is entitled to make, if, in the opinion of the legislature, it is needful that the fee be taken." Cooley's Const. Lim. 558.

The view thus expressed is fully supported by the adjudged cases, which hold that the question as to the degree or quantity of interest to be taken is, like other political questions, exclusively for the legislature; and that when the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. *De Varaigne v. Fox*, 2 Blatchf. 95; *People v. Smith*, 21 N. Y. 595; *Boom Company v. Patterson*, 98 U. S. 403; *United States v. Jones*,. 109 Id. 513; *Beekman v. S. S. R. R. Co.*, 3 Paige, 45; S. C., 22 Am. Dec. 679, and cases cited in the note, p. 692.

But it is unnecessary to dwell upon this point. Clearly, the city cannot be heard to deny the validity of the statute under which it has chosen to proceed. If the statute is invalid then no title whatever can be acquired by virtue of the present proceeding to the land in question. If it is valid, then the interest to be acquired, and for which judgment must be made, is nothing less than the fee-simple. This the statute requires; and the question of expense to the city in making the proposed improvement, except so far as the matter of just compensation to the owner of the land sought to be acquired is concerned, is not a question to be considered by the court. *Ita lex scripta est* is a sufficient answer to all that has been urged in the argument by counsel for the city.

Nor did the hustings court err in holding, that in ascertain-

ing the sum to be paid for the land in question, the ordinance of the town council, of the 10th October, 1883, could not be considered. That ordinance is as follows:

"Whereas the town of Roanoke has called for a commission for the purpose of assessing the damages to the lot of W. F. Berkowitz, by reason of running a water-course through his property. And whereas the council has no intention of restraining Mr. Berkowitz from the privilege of erecting any house or other structure across the said stream, and Mr. Berkowitz is desirous that such may be made distinctly; therefore, be it resolved,

"1st. That the privilege is hereby granted Mr. W. F. Berkowitz to erect such building or structure across the said stream as he may desire, provided that he does not obstruct the free passage of water underneath the same.  *  *  *  *

"2d. That the mayor is hereby authorized to convey by deed the said privilege to the said Berkowitz, should he desire the same."

This ordinance is assailed by the defendant in error as *ultra vires*, and consequently revocable at the will of the council. And in support of this position reference is made to the case of *Norfolk City* v. *Chamberlaine*, 29 Gratt. 534. Without, however, deciding the question thus raised, it is sufficient to say that it does not appear that the ordinance was passed at the instance of Berkowitz, or that he has at any time acquiesced therein. On the contrary, the record shows that "his assent thereto was distinctly denied." Clearly, then, his rights are unaffected thereby, and the hustings court properly so held.

Upon the whole, we are of opinion that there is no error in the judgment, and that it must be affirmed.

JUDGMENT AFFIRMED.