O’NIBLL, C. J.
 

 This is a contest over the proceeds of a sale made by the sheriff in foreclosure of a mortgage and vendor’s lien. The plaintiffs in the executory proceeding-own 13 notes of $1,000' each, and the intervener’ owns five notes of $l,000i each, and. one note for $500. All of the notes are of the same series, and secured by the same mortgage and vendor’s lien. The plaintiffs, William P. Leonard and wife, bought the property at the sheriff’s sale for $7,325; which, after deducting the taxes and costs, was hardly enough to pay the bank’s six
 
 *1035
 
 notes with interest and attorney’s fees, much less to pay the 13 notes of the Leonards. Each party claims, primarily, a superior lien on the proceeds of the sheriff’s sale, and claims, alternatively, a pro rata share of it.
 

 The district court gave judgment in favor of the intervener, the Peoi>le’s Bank, ordering the bank’s claim paid in full in preference to the claim of the plaintiffs, and they have appealed.
 

 They were the owners of the land, and had promised to sell it to one C. H. Andrews for $100 an acre, say $15,500. Andrews bargained to sell it to Brooks for $21,000. At the request of Andrews, Leonard, for himself and with power of attorney from his wife, made the sale directly to Brooks for $21,000, of which $2,500 was paid in cash, and the balance, $1S,500, was payable in 19 annual installments, $1,000 a year for 18 years, and $500 at the end of the nineteenth year. The payments were represented by 19 promissory notes, Issued by Brooks, made payable to his own order, and indorsed by him, 18 of the notes being for $1,000 each, and the last note being for $500. The notes bore interest at 8 per cent, per annum, payable annually, were secured by mortgage and vendor’s lien on the property sold; and it was stipulated in the deed that the whole debt would become due in the event of a default in the payment of an installment either of principal or interest.
 

 It was agreed between Leonard and Andrews that the unpaid $13,000 of the purchase price coming to- the Leonards should be paid in preference to the $5,500 of profit coming to Andrews. Leonard therefore retained the 13 first maturing notes, and gave Andrews the five notes due in 14, 15, 16, 17 and 18 years, respectively, and the note for $500 due at the end of the nineteenth year. On the next day or two days afterwards, Andrews offered to sell his notes to Leonard, but the latter declined to buy them; and, by agreement of the parties, this indorsement was written on the back of each note and signed, viz.:
 

 “I hereby indorse the note, guaranteeing only payment in event that all previous notes of same series have been paid, and that no demand will be made on me until all legal steps have been taken against maker.
 

 “[Signed] W. P. Leonard.
 

 “[Signed] Charles H. Andrews.”
 

 The six notes were then returned to Andrews, who afterwards assigned them to one S. E. Cole in exchange for two automobiles. Cole was in the automobile business, and was also cashier of the People’s State Bank of Coushatta. The record does not show how the bank got the notes; but that is not important in deciding this case. The supposed guaranty or equitable estoppei which the bank is pleading against the Leonards in this case was not a i>art of the notes, or of the unconditional obligation to pay, and it is therefore not any more an obligation in favor of the bank than it was in favor of Andrews, the first transferee of the notes. There was no record of any guaranty or quasi guaranty on the part of the Leonards to sacrifice their claim represented by the 13 notes which they retained if the mortgaged property should be not sufficient to pay them and the six notes given to Andrews.
 

 The argument that the bank’s notes should be paid in preference to the notes1 held by the Leonards is based upon the doctrine, announced in several decisions of this court, that, when the holder of a series of notes secured by the same mortgage or lien transfers one or some of the notes and receives the price, there is an equitable estoppel, or quasi or tacit guaranty, to the effect that the transferor shall not come in competition with his transferee, if the proceeds of a sale of the property, in a subsequent foreclosure of the mortgage or lien, should be not sufficient to pay all of the series of notes. Salz
 
 *1037
 
 man v. His Creditors, 2 Rob. 243; Ventress v. His Creditors, 20 La. Ann. 359; Barkdull v. Herwig, 30 La. Ann. 618; Reine v. Jack, 31 La. Ann. 860; Abney v. Walmsley, 33 La. Ann. 590; Citizens’ Bank v. Maureau, 37 La. Ann. 864; Butler v. Clarke, 44 La. Ann. 148, 10 So. 499; State Nat. Bank v. Bryant, 49 La. Ann. 478, 22 So. 89.
 

 The Leonards contend that the indorsement on the notes held by the bank shows that the mortgage and lien securing these notes was subordinated to the mortgage and lien securing the 13 notes that were retained by the Leonards. It can hardly be doubted that when Leonard, merely to accommodate Andrews, made the sale directly to Brooks at the price which he was to pay Andrews, instead of making the sale to Andrews at the price which he was to pay the Leonards, the parties did not intend to impair the security of the Leonards by allowing the notes, representing the profit which Andrews expected to receive, to compete with the notes representing the purchase price due to the Leonards. Andrews and Leonard both testified, over the objection of the bank’s attorney, that their understanding, at the time of the sale, was that the price due to the Leonards should be paid in preference to the profit due to Andrews. xVnd that seems very likely, because, if Leonard had made the sale to Andrews according to the original agreement for the price which the Leonards were to receive, $15,500, and if Andrews had after-wards sold to Brooks for the price which he ■was to pay to Andrews, $21,000, the mortgage or lien securing the profit- of $5,500 coming to Andrews could not have impaired or interfered with the mortgage or lien securing- the purchase price due to the Leonards. There is no reason why the Leonards should have secured Andrews’ profit to their own prejudice. But the fact remains that they failed to stipulate in the deed or in the notes, at the time of the sale, that the 6 notes that were given to Andrews were to be subordinate to the 13 notes retained by the Leonards. The omission perhaps was first observed when Andrews called upon Leonard, the next day or two days later, and offered to sell his notes to Leonard. It was then agreed that Leonard would guarantee the payment of the 6 notes held by Andrews provided the 13
 
 notes
 
 held by the Leonards should be paid first, and provided all recourse should be exhausted against the maker of the" indorsed notes before a demand should be made upon Leonard. The notes, being indorsed by the maker, were negotiable by mere delivery. Therefore there was no reason for either Leonard or Andrews to indorse them, except as evidence of an agreement between them as to the order or rank in which the notes held by each of them were secured. The language used in the indorsement, however, did not in terms subordinate the indorsed notes to the other notes of the series; and testimony was not admissible against the bank, or any third party, to contradict or change the language or purport of the indorsement. •
 

 On the other hand, if S. E. Cole, in acquiring the notes from Andrews, or if the bank, as transferee
 
 from
 
 Cole, had any idea of acquiring a right to be paid by preference over the holder of the other notes of the series, in a foreclosure of the mortgage and lien securing the notes, the indorsement was enough to "warn such transferee that the notes were not to be paid in preference to the other notes of the series. It was not possible for a transferee of the indorsed notes to be deceived in that way.
 

 Although verbal testimony was not admissible to prove, to the prejudice of a third party, that the indorsement on the notes held by the bank was intended to subordinate these notes to the other notes of the same series, nevertheless, verbal testimony was admissible — and was rightly admitted— to counteract any presumption that might otherwise have prevailed that the notes that
 
 *1039
 
 were retained by Leonard were, by effect of his transferring the other notes to Andrews, subordinated to these other notes. A mortgage or lien securing a negotiable promissory note is not itself a negotiable instrument. With regard to stipulations in an act of mortgage, securing the payment of a promissory note, the law that protects a bona fide holder of the note is the law of registry. Davis v. Welch, 128 La. 785, 55 So. 372; First Nat. Bank v. Garlick, 137 La. 282, 68 So. 610. The law of registry forbids the parties to an act of mortgage to defeat the rights of innocent third persons by contradicting the record. But there was nothing on record, in this instance, to induce Brooks or the bank, or any one dealing with Andrews, to believe that his notes were entitled to be paid in preference to the other notes of the same series secured by the same mortgage and lien.
 

 The first and general principle of law that governs this case is that the holders of several promissory notes of one or the same series, secured by the same mortgage or lien are on equal footing, and are entitled to share equally or ratably in a distribution of the proceeds of a sale of the property, if, in a foreclosure of the mortgage or lien, the proceeds be not sufficient to pay all of the notes. Florance v. Orleans Nav. Co., 1 Bob. 224; Petrovic v. Hyde, 16 La. 225; Adams v. Lear, 3 La. Ann. 144; Ventress v. His Creditors, 20 La. Ann. 361; Perot v. Levasseur, 21 La. Ann. 531; Begnaud v. Roy, 21 La. Ann. 624; Howard v. Schmidt, 29 La. Ann. 130; Mechanics’ Building Ass’n v. Ferguson, 29 La. Ann. 550; Reine v. Jack, 31 La. Ann. 860.
 

 “Where a mortgagee transfers to different persons portions of the mortgage debt, they will be entitled to payment, pro rata, out of the property mortgaged; no preference results from any difference in the dates of the transfers.” Adams v. Lear, 3 La. Ann. 144; Ventress v. His Creditors, 20 La. Ann. 361; Perot v. Levasseur, 21 La. Ann. 531; Reine v. Jack, 31 La. Ann. 860.
 

 Therefore, a person who acquires from the original mortgagee a mortgage note belonging to a series of notes secured by the same mortgage or lien has no right to assume that his note will be paid in preference to the remaining notes.".
 

 The doctrine relied upon by the bank in this case, that the holder of a series of notes secured by the same mortgage or lien cannot transfer one or some of the notes and receive the price, and thereafter compete with his transferee in a distribution of the proceeds of a sale of the mortgaged property, being an exception to the general rule that the rights of all of the holders of a series of notes secured by the same mortgage or lien are concurrent, must be construed strictly. This exception is founded upon a principle or presumption of warranty, or equitable estoppel. Butler v. Clarke, 44 La. Ann. 148, 10 So. 499, citing Troplong, Des Privileges et Hypotheques, vol. 1, No. 367, and Grenier, vol. 1, No. 93. Where there is no obligation of warranty, expressed or implied, and no basis for an estoppel, there is no exception to the rule that the several holders of the notes of the series, secured by the same mortgage or lien, are on equal footing. “Cessante ratione legis, cessat ipsa lex.”
 

 There is no equity in the demand of the bank to be paid in preference to Leonard. Ho did not sell the notes which the bank holds, or receive any price or consideration for turning them over to Andrews. It is true there are expressions in the decision in Abney v. Walmsley, 33 La. Ann. 590, to the effect that it makes no difference that the transferor in such case receives no price or consideration; but the expressions are not controlling, for they are not in accord with the underlying principle on which the decisions on the subject are founded.
 

 
 *1041
 
 Aside from the fact that Andrews did not buy the notes from Leonard, the subsequent agreement indorsed upon them showed that Leonard did not warrant payment of the notes, except on the condition that his own notes should be paid first, and that all recourse against the maker of the notes should be exhausted before making demand upon Leonard. As Andrews had no right to be paid in preference to Leonard, he conveyed no such right to his transferee, Cole, and Cole conveyed none to the bank.
 

 The unpaid taxes on the property, retained by the sheriff as tax collector, amounted to $253.5S, and the costs in the executory proceedings, not attributable to the bank’s opposition, amounted to $120.65, leaving $6,-950.77 to be applied to the debt secured by the mortgage and lien.
 

 The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the net proceeds of the sheriff’s sale, $6,950.77, be divided between the plaintiffs and the intervener, People’s Bank, in the proportion of 70.3 per cent, to the plaintiffs, and 29.7 to the bank. The court costs incurred by the bank’s intervention or opposition in the district court are to be paid out of the part of the ,fund due to the plaintiffs, and the costs of appeal are to be paid out of the part due to the bank.