162 So. 208

## MERIWETHER v. NEW ORLEANS REAL ESTATE BOARD.

## Intervention of RECONSTRUCTION FINANCE CORPORATION.

No. 33131.

April 29, 1935.

Rehearing Denied May 27, 1935.

Dufour, St. Paul, Levy & Miceli and Anna Judge Veters, all of New Orleans, for appellant Reconstruction Finance Corporation.

McCloskey & Benedict, of New Orleans, for appellee.

HIGGINS, Justice.

This is an appeal from a judgment dismissing a petition of intervention in a contest between two transferees of mortgage notes of the same series, secured by a mortgage on certain real estate, over the proceeds of the sale of the property through foreclosure proceedings; the amount thereof being insufficient to pay both claims.

Plaintiff contends that intervener purchased the first six notes of the series, after their maturity, from their common transferor, and therefore took them subject to the same defense as could be urged against him, i. e., that transferor was estopped to compete in the distribution of the proceeds of the sale of the mortgaged property against his transferee, plaintiff herein, citing sections 52, 57 and 58 of Act No. 64 of 1904, generally known as the Negotiable Instrument Law, and the case of Amite Bank & Trust Company v.

Standard Box & Veneer Co., Inc., 177 La. 954, 149 So. 532.

Intervener argues that the evidence shows that the notes were purchased by it for value, before maturity; that they were not bought from a common transferor, but a third party; that the evidence is insufficient to show that the plaintiff is a bona fide holder for value, in due course, of the 42 notes which he purchased; and that the funds should be prorated between them.

Assuming that plaintiff purchased its notes from the same transferor before the intervener did, and that plaintiff is a bona fide holder in due course, for value, and that intervener purchased his notes after their maturity, a view most favorable to the plaintiff, but without deciding these issues concerning which we express no opinion, we shall pass to a consideration of the question of whether or not intervener is entitled to share in the distribution of the proceeds of the sale of the property.

In the case of Begnaud v. Roy, 21 La. Ann. 624, the court said:

"The defendant, who is the holder and owner of two of a series of notes secured by a mortgage, obtained an order of seizure and sale against the property mortgaged.

"Before the sale, the plaintiff, who holds another of the notes secured by the same mortgage, filed a third opposition, claiming the right to be paid by preference out of the proceeds of the sale of the prop-

erty mortgaged, *because she acquired her note before its maturity, and that the defendant acquired his notes subsequently and after their maturity.*

"There was judgment in favor of the plaintiff ordering the sheriff to pay her the amount of her claim by preference, and the defendant has appealed.

"We had occasion to examine this question recently, and we held that *the transferees of portions of a mortgage debt are entitled to be paid, pro rata, out of the proceeds of the property mortgaged without regard to the time when they were transferred. We adhere to that position.* See Perot v. Levasseur, 21 La. Ann. 529." (Italics ours.)

In the case of Reine v. Jack, 31 La. Ann. 859, the court said:

"The fact that the person holding a series of mortgage notes after transferring some of them can not be allowed, in the event of the inadequacy of the proceeds, to compete in the distribution with the person holding the transferred notes, is not the measure of the rights of transferees, inter sese. Adams v. Lear, 3 La. Ann. 144; Perot v. Levasseur, 21 La. Ann. 529. *Nor do we think the fact that one of the holders acquired after maturity makes his position an exceptional one, as we consider to have been correctly decided in Perot vs. Levasseur.* The equitable or quasi equitable estoppel applied to one who had transferred in Salzman v. His Creditors, 2 Rob. [241] 243, *is in no sense an*

*equity against the note in the hands of a transferree; nor is such transferree subject as the holder of the note to the estoppel,* which, as applied in the Salzman and other cases, *is not a defense to the note, but simply an estoppel, good against a transferrer when he seeks to compete with his transferree, but not applicable to transferrees between themselves."* (Italics ours.)

In Leonard v. Brooks, 158 La. 1032, 1039, 105 So. 54, 56, we said:

"The first and general principle of law that governs this case is that the holders of several promissory notes of one or the same series, secured by the same mortgage or lien are on equal footing, and are entitled to share equally or ratably in a distribution of the proceeds of a sale of the property, if, in a foreclosure of the mortgage or lien, the proceeds be not sufficient to pay all of the notes. Florance v. Orleans Nav. Co., 1 Rob. 224; Petrovic v. Hyde, 16 La. [223] 225; Adams v. Lear, 3 La. Ann. 144; Ventress v. His Creditors, 20 La. Ann. [359] 361; Perot v. Levasseur, 21 La. Ann. 531; Begnaud v. Roy, 21 La. Ann. 624; Howard v. Schmidt, 29 La. Ann. [129] 130; Mechanics' Building Ass'n v. Ferguson, 29 La. Ann. [548] 550; Reine v. Jack, 31 La. Ann. [859] 860.

" 'Where a mortgagee transfers to different persons portions of the mortgage debt, they will be entitled to payment, pro rata, out of the property mortgaged; *no preference results from any difference in the dates of the transfers.'* Adams v. Lear, 3 La. Ann. 144; Ventress v. His Creditors, 20 La. Ann. [359] 361; Perot v. Levasseur, 21 La. Ann. 531; Reine v. Jack, 31 La. Ann. [859] 860.

"Therefore, a person who acquires from the original mortgagee a mortgage note belonging to a series of notes secured by the same mortgage or lien has no right to assume that his note will be paid in preference to the remaining notes."

See, also, Chatten v. Knoxville Trust Co., 154 Tenn. 345, 289 S. W. 536, 50 A. L. R. page 543, and Herman v. Pfister, 2 La. 455, 459.

 The jurisprudence is well settled that, if the holder of a series of mortgage notes secured by mortgage on certain real estate sells some of them and retains the others, and subsequently the property securing all of the notes is sold at foreclosure and fails to bring sufficient money to pay all of the notes, that the vendor of the notes cannot compete with his vendee in the distribution of the proceeds of the sale. Salzman v. His Creditors, 2 Rob. 241; Ventress v. His Creditors, 20 La. Ann. 359; Barkdull v. Herwig, 30 La. Ann. 618; Abney v. Walmsley, 33 La. Ann. 589; Citizens' Bank v. Maureau, 37 La. Ann. 857, 864; Butler v. Clarke, 44 La. Ann. 148, 10 So. 499; State Nat. Bank v. Bryant & Mathers, 49 La. Ann. 467, 478, 22 So. 89.

The above cases, however, are not apposite in the instant case, because this is

a controversy between transferees or vendees and not a contest between the vendor or transferor and his vendee or transferee. The theory on which the transferor is prevented from participating in the proceeds against his transferee is based upon an equitable estoppel. The courts have declared that it is inequitable for a transferor to compete with his transferee for the proceeds of the sale when that amount is inadequate to pay both. The transferor, having received from the transferee the purchase price of the note, is not permitted to take any of the proceeds of the sale to the prejudice of the transferee, who is endeavoring to secure the payment or liquidation of his note through the foreclosure proceedings. But these equitable considerations cannot be logically, reasonably, and justly applied against the transferee, as he did not receive any consideration from the other transferee. Nor is there any privity of contract whatsoever between the transferees and, therefore, no presumption of warranty or equitable estoppel can arise against the transferee, because it is only through the courts implying a warranty on the part of the transferor in favor of his transferee that the doctrine or theory of equitable estoppel is applied. This was pointed out by us in the case of Leonard v. Brooks, supra, 158 La. 1032, at page 1040, 105 So. 54, 57, in the following language:

"The doctrine relied upon by the bank in this case, that the holder of a series of notes secured by the same mortgage or lien cannot transfer one or some of the notes and receive the price, and thereafter compete with his transferee in a distribution of the proceeds of a sale of the mortgaged property, being an exception to the general rule that the rights of all of the holders of a series of notes secured by the same mortgage or lien are concurrent, must be construed strictly. This exception is founded upon a principle or presumption of warranty, or equitable estoppel. Butler v. Clarke, 44 La. Ann. 148, 10 So. 499, citing Troplong, Des Privileges et Hypotheques, vol. 1, No. 367, and Grenier, vol. 1, No. 93. Where there is no obligation of warranty, expressed or implied, and no basis for an estoppel, there is no exception to the rule that the several holders of the notes of the series, secured by the same mortgage or lien, are on equal footing. 'Cessante ratione legis, cessat ipsa lex.'

"There is no equity in the demand of the bank to be paid in preference to Leonard. He did not sell the notes which the bank holds, or receive any price or consideration for turning them over to Andrews. It is true there are expressions in the decision in Abney v. Walmsley, 33 La. Ann. [589] 590, to the effect that it makes no difference that the transferor in such case receives no price or consideration; but the expressions are not controlling, for they are not in accord with the underlying principle on which the decisions on the subject are founded."

From the foregoing authorities it appears that the intervener is entitled to its pro rata share of the proceeds, unless it can be said, as plaintiff argues, that this case is controlled by sections 52, 57 and 58 of Act No. 64 of 1904, and the case of Amite Bank & Trust Co. v. Standard Box & Veneer Co., Inc., supra.

Section 52 simply provides that one who takes commercial paper after it is overdue is not a holder in due course.

Section 57 provides that holders in due course take an instrument free from *any defect of title of prior parties and free from the defenses of prior parties among themselves.* It does not contain any provision affecting *the right of transferees* inter sese of notes secured by the same mortgage.

Section 58 applies to the defenses and equities of makers and indorsers of notes, and does not take away any of the rights of holders of concurrent notes secured by the same mortgage. The equities and defenses referred to are those that exist between the parties to the instrument and not to claims arising out of collateral matters. 31 Harvard Review, 1121; 5 Tulane Law Review, 300.

The case of Amite Bank & Trust Co. v. Standard Box & Veneer Co., Inc., supra, is inapplicable, because we held there that one who takes a negotiable instrument after maturity takes it subject to *the equities which the makers or indorsers might plead against the original owner.* No reference to the rights of holders of mortgage notes as between themselves appears in the decision, as that issue was not involved in the case.

We find in the above-cited sections of the Negotiable Instrument Law nothing which alters the rights of holders of concurrent notes secured by the same mortgage. The pro rata rule announced in the early decisions of this court and cited with approval by us as late as 1925, in Leonard v. Brooks, supra, is still the law in Louisiana. This doctrine remains unchanged by the Negotiable Instrument Law which, while it gives certain new and additional rights to holders in due course, takes nothing away from the transferee after maturity. These new or additional rights granted by the Negotiable Instrument Law are not rights against concurrent holders of mortgage notes secured by the same mortgage, but are confined to "defenses available to prior parties among themselves." Section 57.

The situation here presented is not covered by the Negotiable Instrument Law, but it is controlled by the law of registry. Leonard v. Brooks, supra. There we said: "the law that protects a bona fide holder of the note is the law of registry."

For the reasons assigned, the judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the

proceeds of the sale of the mortgaged property be distributed proportionately on all the notes secured by the mortgage, or ⁶⁄₅₀ of the net proceeds to the intervener and ⁴²⁄₅₀ thereof to plaintiff; and that the plaintiff pay the costs in both courts.

On Application for Rehearing.

PER CURIAM.

The appellee, in his application for a rehearing, calls our attention to an expression in the syllabus of the report of the decision in Hutchinson v. Rice, 105 La. 474, 29 So. 898, to the effect that a pledgee of mortgage notes, receiving them after their maturity, has no greater right than the pledgor had, especially so far as the mortgage securing the notes is concerned. That must be read, however, in connection with the facts of the case, and the issue which was decided. The contest was between the original holder of a series of mortgage notes, who retained some of them, and the pledgees of the others of the series of notes. The court found that the notes which the pledgees held had not been sold or negotiated by the original holder, but had been paid by the maker at their maturity and by him pledged. It would have been sufficient to say, in deciding the case, that the mortgage securing the notes which were pledged after their maturity had been extinguished by payment of the notes, by the maker.

The petition for a rehearing is denied.