## No. 10,847.

### THOMAS BUTLER VS. MRS. M. O. CLARKE.

1. Where an insolvent before his cession is the owner of certain promissory notes of a third person, which promissory notes are all separate and distinct obligations and secured by separate, distinct ar d successive mortgages resting on the same piece of real property; and where the insolvent pledges these promissory notes to different creditors, the pledgee of the second mortgage note is an ordinary creditor as to the proceeds of the first mortgage note.

2. That is, these notes be'ng different *res*, the fact that a creditor is the pledgee of the second mortgage note gives this creditor no preference to be paid over the general creditors, out of the proceeds of the first mortgage note.

3. The principle recognized in our jurisprudence, that the assignor of one or several concurrent mortgage notes secured by the same mortgage is estopped from contesting his assignee's right to be paid by preference over the concurrent notes retained by him, is fully discussed and shown to be inapplicable to this case.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

*Gilmore & Baldwin* and *E. T. Florance* for Syndic and Appellant:

1. The property of a debtor is the common pledge of his creditors, and the proceeds must be distributed among them ratably unless there exist some lawful cause of preference. R. C. C., Art. 3183.

Butler vs. Clarke.

2. Where an insolvent, prior to his cession, is the owner of certain promissory notes made by a third person the proceeds of these promissory notes must go in.o the hands of the syndic to be distributed among the creditors ratably, unless there exist some lawful causes of preference.

3. If any of these promissory notes have been lawfully pledged, that pledge gives to the pledgee a lawful cause of preference   R. C. C., Art 5184; Art. 3221.

4. But the privilege given to the pledgee, and the consequent right of satisfying his debt in preference to the other creditors, is strictly limited to proceeds of the movables pledged *to him*.  R. C C , Art. 3157.

5. Therefore, to be a pledge of one *res* gives no right to a creditor to be paid by preference out of another *res* belonging to the same debtor—*i. e.*, as to that other *res* the creditor is an ordinary creditor.

6. This is true in all cases, and the fact that the different things pledged are promissory notes of a third person, secured by successive mortgages, can not affect the rule.

7. Therefore, where an insolvent before his cession is the owner of certain promissory notes of a third person; which promissory notes are all separate and distinct obligations and secured by separate, distinct and successive mortgages resting on the same piece of real property; and where the insolvent pledges these promissory notes to different creditors, the|pledgee of the second mortgage note is an ordinary creditor as to the proceeds of the first mortgage note.

8. That is, these notes being different *res*, the fact that a creditor is the pledgee of the second mortgage note gives this creditor no preference to be paid over the general creditors out of the proceeds of the first mortgage note.

9. Particularly so, as the contract of pledge is *stricti juris* and can not be extended by analogy from one thing to another.

10. In a case of this kind, the syndic of the creditors is not estopped from seeking t^ recover for distribution the surplus of the proceeds of the first mortgage note.

*Singleton, Browne & Choate* for Mutual National Bank, Opponent and Appellee:

1. Where A, as the holder of two separate notes made by B, secured by his mortgage in favor of A, on the same property, pledges them with their accessory right of mortgage by separate contract to C and D, and he then becomes insolvent months afterward, neither he nor the syndic of his creditors can come into competition with D, pledgee of the second mortgage, and claim the surplus remaining of the first mortgage after C has been paid the debt due him, should the proceeds of the property be insufficient to p.iy both debts for which it had been pledged by A.  A and B are co-debtors *in solido*, and good faith prevents either from competing with their creditor.  Salzman vs. His Creditors, 2 R. 241; Ventress vs. His Creditors, 20 An. 361; Mechanics' Association vs. Ferguson, 29 An. 549; Barkdull vs. Herwig, 30 An 621; Reine vs. Jack, 31 An. 860; Abney vs. Walmsley, 38 An. 590; C. C. Arts. 2175, 2178, 2179, 2645; Campbell vs. Slidell, 5 An. 274; Labouisse vs. Orleans Cotton Rope Co., 43 An. 582.

2. The pledge by A of the notes of B included the accessory right of mortgage and gave to each pledgee, so far as A and B are concerned, the right to be paid out of the entire proceeds of the real estate mortgaged, and each pledgee be-

Butler vs. Clarke.

came owner *pro tanto* of each obligation, which are indivisible, and to the extent of their claims they should be paid in the order of their respective ranks by preference out of the entire proceeds of the real estate mortgaged. The pledge of the mortgage note was practically a pledge of the real estate, and as the real estate itself has been sold to pay the debts of the pledgees, and not the notes, the latter have a right to look to the proceeds of that thing for payment. C. C. 2645, 3133, 3278, 3280, 3282; 29 An. 548; 27 An. 562; 35 An. 6.

*J. C. Gilmore* for Westfeldt Bros., Opponents and Appellees:

I.

A transferrer of mortgage notes is estopped from competing with his transferees in the proceeds of sale of the property mortgaged. Reine vs. Jack, 31 An., p. 859, and citations.

II.

Competition arising between holders of mortgage notes on the same property takes place only where the mortgage notes are of the same series. Adams vs. Lear, 3 An., p. 144; Salzman vs. Creditors, 2 Rob. 244; Barkdull vs. Herwig, 30 An. 618; Abner vs. Walmsley, 33 An. 548; Ventress vs. Creditors, 20 An., pp. 145, 359, and other authorities cited in brief. Cahn vs. Ford, 42 An.; Levy vs. Ford, 41 An. 873.

III.

A party is concluded from participating in the proceeds of sale of a mortgage property beyond a single mortgage where he acquires no right of subrogation to preceding mortgages. Later mortgage notes held by him are presumably retired in his favor. R. C. C. 3172 [3139]; Subrogation, Art. 2161 [2157]. Principle of above cited authorities invoked against such a party.

IV.

Preferences given by a debtor within three months preceding his failure are null and void, except where shown to be for a true and just consideration, *bona fide*, delivered at the time of such transaction. Rev. Stat., Sec. 1808; Black vs. Richardson & Co., 37 An. 594; Seixas vs. Citizens' Bank, 38 An. 424.

V.

A subsequent mortgagee is entitled to be advanced on the proceeds of sale proportionally as intervening mortgages are perempted or retired in the interest of his transferee who had held all the preceding mortgages. Jennings vs. Vickers, 31 An. 684, and authorities cited. 8 Rob. 435; 14 An. 587; 20 An. 264.

A conventional mortgage between parties embraces all conventional mortgage rights on the property.

The opinion of the court was delivered by

FENNER, J.   The parties have agreed upon a statement of facts in this case, and although the statement is lengthy we will not endanger its completeness by abbreviation.   It is as follows:

The parties to the present proceedings are:

1. Thomas Butler, plaintiff.

2. Mrs. M. O. Clarke, defendant.

3. The Syndic of the creditors of James Clark, appearing in the place of the provisional snydic, intervenor.

4. The Mutual National Bank of New Orleans, intervenor.

5. Westfeldt Brothers, a commercial firm of this city, intervenor.

Mrs. M. O. Clarke, a widow, is the mother of James Clarke.

James Clarke, until his cession in July, 1890, was engaged in business as wholesale dealer in coffee, in New Orleans, under the firm name of James Clarke & Co.

In June, 1880, Mrs. M. O. Clarke was indebted to her son, James Clarke, in the sum of $4832.22, as shown by an account rendered her at the time, and which account she acknowledged to be correct before a notary public.

Mrs. M. O. Clarke liquidated this indebtedness by her own promissory note for $4832.22, dated June 1, 1880, maturing one year after date, bearing interest at 8 per cent. per annum, from date, and secured this promissory note by a mortgage dated June 14, 1880, and duly inscribed.

On July 31, 1883, Mrs. Clarke was similarly indebted to her son, James Clarke, in a second sum of $8614.79, which sum she also liquidated by a promissory note, and secured this by a second mortgage, dated August 8, 1883, duly recorded.

On December 31, 1885, she was indebted to James Clarke in the sum of $6340.75, and she gave a promissory note for that amount, and secured it by a third mortgage, dated June 28, 1886, duly recorded.

On the 1st of June, 1889, she was indebted to James Clarke in a fourth sum of $9115.71, and for the fourth time she gave to him her promissory note for a corresponding amount, and secured it by a fourth mortgage, dated September 7, 1889, duly recorded.

On the 14th of June, 1890, she was indebted to James Clarke again in the full sum of $9115.71, and she gave to the said James Clarke her promissory note for that amount, and secured it by a fifth mortgage, dated the 24th day of June, 1890, duly recorded.

The mortgages all rest on the same piece of real estate, viz., a house situated at the corner of St. Charles avenue and Fourth street, but they are all separate and distinct one from another, and secure separate and distinct obligations arising at different times.

After these promissory notes of Mrs. M. O. Clarke, each secured by a separate mortgage from its fellows, had been given by her for value received to James Clarke, they became the property of James Clarke.

On September 8, 1888, James Clarke borrowed $5000 from Thomas Butler, plaintiff in the present suit, and gave his promissory note therefor, payable one year after date, and secured his promissory note by pledging as collateral the first mortgage note of Mrs. M. O. Clarke, dated June 14, 1880, with a face value of $4832.22, and with accrued interest at 8 per cent. per annum from date.

On February 10, 1890, Clarke borrowed from the Mutual National Bank $6300, and gave his promissory note therefor, securing this promissory note by pledging as collateral a note of Philip Thompson, for a like amount, which note was a valuable security, and worth its face value at maturity.

This note of Philip Thompson, which had been pledged by James Clarke to the Mutual National Bank, was withdrawn by Clarke on May 7, 1890, the day of its maturity, when it would have been paid if not withdrawn. Instead of this note there was pledged to the bank as collateral the mortgage note of Mrs. M. O. Clarke for $8614.79, with accrued interest at 8 per cent. per annum, the note being dated July 31, 1883, and being the second one of the notes referred to above, and secured by the second mortgage in rank. The note of James Clarke, given to the Mutual National Bank, which this second mortgage note of Mrs. M. O. Clarke was given to secure, was originally for $6300. This note of James Clarke, however, before his insolvency, was, by a payment of $4000 thereupon, reduced to $2300, so that the second mortgage note made by Mrs. M. O. Clarke, amounting to $8614.79, is now pledged to the Mutual National Bank, to secure an amount due by James Clarke of $2300. This note of Philip Thompson was withdrawn by Clarke in order to return it to Thompson, who had paid a note for the same amount, which he had received from Clarke and discounted.

On the 6th day of April, 1889, James Clarke obtained a loan from the Mutual National Bank of $5000, and gave in pledge to secure that loan the third and fourth mortgage notes given by Mrs. M. O. Clarke, amounting respectively to $6340.75 and $9115.71, both with accrued interest.

In June, 1890, James Clarke borrowed from Westfeldt Bros., of

this city, $5000, and gave his note therefor, and pledged as collateral security the fifth mortgage note given by Mrs. M. O. Clarke, amounting to $9115.71.

In July, 1890, James Clarke made a voluntary cession of all his property to his creditors. The petition and schedule were duly filed in this honorable court in Division "A," under the Number 30,763, and John R. Picton was duly appointed provisional syndic.

In September, 1890, the promissory note for $5000, given by James Clarke to Thomas Butler, which was secured by a pledge of Mrs. M. O. Clarke's first mortgage note for $4832.22, with accrued interest, fell due, and being unpaid, Butler, the holder of the collateral security, provoked executory process against Mrs. M. O. Clarke in the present proceedings. A writ of seizure and sale was duly issued, and under that writ the real estate so mortgaged was sold, realizing in cash $15,200.

Before the day of sale interventions and oppositions filed brought the following parties before the court:

1. The Mutual National Bank, holding, pledged to it as collateral (a) the second mortgage note of Mrs. M. O. Clarke, for $8614.79, with accrued interest, at 8 per cent. per annum, to secure a note of James Clarke for $2300; and (b) the third and fourth mortgage notes of Mrs. M. O. Clarke, to secure a note of James Clarke for $5000, the bank claiming that under these pledges it should be paid out of what remains of the proceeds of the real estate after the claim of Thomas Butler is satisfied.

2. Westfeldt Brothers, a commercial firm of this city, holding the fifth mortgage note of Mrs. M. O. Clarke, pledged to secure a note of James Clarke for $5000. Westfeldt Brothers claim the right to be paid out of the proceeds of the real estate after the bank and Butler are satisfied.

3. The provisional syndic of the creditors of James Clarke. In the place of the provisional syndic the definitive syndic now stands. The claim of the syndic is that the general creditors of James Clarke are entitled to have distributed among them the surplus that may remain on each mortgage note of Mrs. M. O. Clarke, after the note of James Clarke, that it has been pledged to secure, has been paid. Butler, by the consent of all parties, has been paid, and he and his claim are eliminated from the case.

The Mutual National Bank filed proceedings in the Civil District

Court, and applied for a writ of seizure and sale on the mortgage notes held by it shortly after the proceedings instituted by Butler, and prior to the sale of the property.

The questions presented for our solution in this case arise out of conflicting rights in the distribution of the proceeds of the sale of the mortgaged property.

The syndic of James Clarke claims that all the mortgage notes of Mrs. M. O. Clarke belonged to James Clarke at the date of his cession, and passed, by his cession, to his creditors, who succeeded to all his rights therein; that the first mortgage note passed to the creditors unaffected by any privilege except that resulting from the pledge in favor of Thos. Butler, and that, after the discharge of the debt due to Butler, the surplus of the proceeds applicable to the payment of said first mortgage note must be paid over to the syndic for the benefit of the creditors; and that the same rule must be applied in the distribution of the proceeds applicable to the payment of each successive mortgage note.

The Mutual National Bank and Westfeldt Brothers contend, on the other hand, that Clarke, being the pledgor and quasi assignor to them of the second, third, fourth and fifth mortgage notes, is thereby disabled from competing with them in the distribution of the proceeds of sale of the mortgaged property and from asserting any rights therein until the debts due them are fully paid, and that the syndic, succeeding only to Clarke's rights, is equally disabled.

The bank and Westfeldt Brothers rely upon the following decisions of this court, which hold, in the language of the leading case, that "when the holder of a claim, secured by mortgage, assigns a part of it, he can not be permitted to come in competition with his assignee, if the pledge is insufficient to pay both." Salzman vs. Creditors, 2 Rob. 241; Ventress vs. Creditors, 20 An., 361; Mechanics vs. Ferguson, 29 An. 549; Barkdull vs. Herwig, 30 An. 621; Reine vs. Jack, 31 An. 860; Abney vs. Walmsley, 33 An. 590.

Reference to the cases will show that they all deal with concurrent mortgage notes, with debts arising from the same transaction and secured by the same mortgage. They rest upon the equity that where the holder of several notes representing the same debt and secured by the same mortgage assigns part of the notes, and with

them the mortgage securing them, and has received the full value, he should not be permitted by any act of his to prevent his assignee from recovering the sum which he has paid.

The doctrine rests upon the authority of Troplong and Grenier.

Troplong expressly confines it to the case stated by him, as follows: "Pierre is creditor of Jacques, for 50,000 francs, the price of an estate which he has sold. Pierre assigns a part of this credit to Sempronius, who pays him therefor 24,000 francs. The immovable being seized and sold produces only 40,000 francs. Ought Peter and Sempronius to concur and bear the loss proportionally, or should Sempronious be paid by preference ? "

He concludes that concurrence would be unjust on the ground that " it would be altogether contrary to good faith that the vendor of part of the debt ceded, after having received the price, should come in, by his own act, to prevent his assignee from recovering the sum disbursed by him." 1 Troplong Priv. and Hyp. No. 367.

Troplong refers to Grenier as holding the same view, and we find that Grenier assimilates the price to a part payment of the debt operating a *quasi* subrogation of the assignee to the rights of the assignor in the thing ceded and its accessories to the extent necessary to secure his reimbursement, and he says: "In such a case, the subrogor could not be heard to claim payment of the amount remaining due to him until his subrogees had received the full amount of their subrogations, at least in absence of an express convention to the contrary." 1 Grenier, Hyp. No. 93.

It thus conclusively appears that the authorities have confined this doctrine to cases arising between the assignor and assignee of part of the same debt secured by the same mortgage.

We are now asked, for the first time, to extend the same principle to the case of an assignor who, holding distinct credits secured by different and successive mortgages on the same property, has transferred one of the credits inferior in rank, and to hold that by such transfer he has not only practically subrogated the assignee to all his rights in the credit and accessory mortgage transferred, but in all other mortgages held by him on the same property.

We have considered this subject very maturely, and from every point of view suggested in the able and ingenious briefs of counsel, but we can discover no principle of law which would justify the extension claimed.

The debts represented by these several mortgage notes, and the several mortgages securing them, are as distinct as if they were the notes of different persons secured by mortgages on different properties.

Clarke did not stand in the case of an assignor of part of a claim secured by a mortgage, and who is contesting his assignee's right to be paid out of the proceeds of that mortgage by preference over himself as holder of the other part of said claim. On the contrary, the syndic concedes that each assignee is entitled to be first paid the full amount due him out of the whole avails of the mortgage securing it. But he says: "I hold a distinct claim against our common debtor, secured by a different mortgage, which I have not assigned or pledged to you in any manner, and on which you have no rights, legal or equitable. I yield your right to be paid by preference out of the proceeds applicable to the mortgage, which I transferred to you; but you can not interfere with my rights as holder of a different credit secured by a different mortgage, which I never assigned to you, in whole or part."

Not only are the facts of the instant case entirely different from those in which the principle invoked was applied, but the reasons which supported the application in the latter are entirely wanting in the former. What possible right, legal or equitable, can the assignee of one debt and mortgage acquire upon or against a distinct debt and mortgage not assigned?

Or if we were to adopt the analogy to subrogation suggested by Grenier, we can understand that the party who had made a part payment with subrogation of one of these mortgage notes would be subrogated to the rights of the holder in the note paid, and in the mortgage securing it: but would any one contend that such subrogation extended to his rights in a distinct debt secured by a different mortgage?

We can discover no reason why the holder of distinct claims secured by different mortgages even on the same property can not assign one of them without waiving or prejudicing any of his rights as holder of the others.

In this case all the assignments are made by pledges. The first mortgage note was never pledged to any body but Butler. He would have had the right to enforce his pledge either by selling the note itself or by foreclosing the mortgage. Suppose he had pursued

the former course and had sold the note for a price exceeding the debt due to him, to whom would the surplus have gone? There is no plausible ground for disputing that it would have gone to Clarke or his syndic, and the purchaser of the note would undoubtedly have been entitled to assert all his mortgage rights. Can a mere difference in the mode of enforcing this pledge affect Clarke's right to the surplus of the avails of the thing pledged over the debt for which it is pledged?

The bank and Westfeldt Bros. no doubt feel themselves aggrieved in not collecting the whole of their claims; but we are bound to apply the law and, moreover, to consider the rights and interests of other creditors.

Under our law a man's property is the common pledge of his creditors. This common pledge the law permits, in certain cases, to be invaded by special preferences, such as privileges, pledges and mortgages, when constituted according to law. Nevertheless such permitted preferences are in derogation of the rights of the common pledge and are to be strictly construed and not extended beyond their plain legal meaning and effect.

We think, in this case, that each one of these pledges has acquired no preference except to the extent of the debt secured by each pledge and to be paid out of the proceeds applicable to payment of the particular note pledged; and that the surplus of the proceeds applicable to the payment of each pledged note, after paying the debt secured by that particular pledge, must be paid over to the syndic for distribution among the mass of the creditors.

The above views eliminate the particular contentions urged by Westfeldt Brothers against the transactions of the Mutual National Bank. The Westfeldt Brothers have no rights here except upon the particular *res* pledged to them or its avails. The thing pledged to the bank was an entirely different *res*, and as it has never been extinguished and as the proceeds applicable to its satisfaction must go either to the bank or to the syndic, Westfeldt Brothers have no interest in raising questions as to the validity of the bank's rights therein, which the syndic has not propounded.

It is, therefore, ordered and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now adjudged and decreed that the opposition of the syndic of the creditors of James Clarke be maintained, and that the fund in the hands of the sheriff,

after paying the claim of plaintiff, Thomas Butler, the State, city and drainage taxes, and the costs of these proceedings, be distributed in the following order:

1. To the syndic of James Clarke the amount remaining due on the first mortgage note, after paying the claim of Butler.

2. To the Mutual National Bank the sum of $2300, with 8 per cent. interest from August 4, 1890, till paid.

3. To the syndic the amount remaining due on the second mortgage note, after deducting the foregoing payment to the Mutual National Bank.

4. To the Mutual National Bank the amount of the third mortgage note.

5. If any funds remain, to the Mutual National Bank the amount of the fourth mortgage note.

6. To Westfeldt Brothers the amount of the fifth mortgage note.

And it is further ordered that the opposition of the Mutual National Bank, and of Westfeldt Brothers, in so far as they conflict herewith, be rejected.