Mrs. Lizzie Clara Davis v. Bradley, Wilson & Co.

### No. 3474.

MRS. LIZZIE CLARA DAVIS, wife of FRANK E. MUMFORD, and her minor child, R. E. SMITH, *v.* BRADLEY, WILSON & CO.

This suit is brought on a bill of exchange. The fact that the plaintiffs acquired the instrument after its maturity must determine the case against them. This rule seems to admit of no exception, that a party, taking a bill or note after its maturity, takes it subject to all the equities and exceptions that might exist between the original parties.

It is a principle of the commercial law that the bare fact that a negotiable instrument is unpaid at its maturity is a circumstance sufficient to raise the presumption of fraud, and that there exists some solid reason why it was not paid.

The law of merchants being the law of honor, all bills and notes, the instruments of commercial transactions, will, it is presumed, be promptly paid when due.

A negotiable instrument, unpaid at its maturity, shows upon its face that it was dishonored, and a person who takes it can not be allowed to claim the privilege of a *bona fide* holder without notice.

The plaintiff in this case acquired the bill long after its maturity. The circumstances under which the owner thereof was deprived of its possession, precludes the inference that the captors acquired by the rules of war a legal title.

The want of title in any of the parties acquiring the instrument after its maturity, could therefore be set up by the defendants against the holder.

APPEAL from the Fifth District Court, parish of Orleans. *Leaumont,* J. Jury trial. *Fellows & Mills, J. R. Beckwith,* for plaintiffs and appellants. *Lea, Finney & Miller,* for defendants and appellees.

TALIAFERRO, J. In this case suit is brought upon a bill of exchange for $22,140, drawn at Huntsville, Alabama, on the second of April, 1862, by Joseph C. Bradley, on Bradley, Wilson & Co., of New Orleans, to the order of and indorsed in blank by Thomas W. White, due seventeenth—twentieth of July, 1863.

The answer is that neither the plaintiffs nor any of them have or ever had any lawful title to the instrument sued upon, or that R. W. Smith, from whom it is pretended plaintiffs derived it, ever had any lawful title to it, or that any of them gave any value for the same. The defendants aver that the bill of exchange was first issued to the State Bank at Charleston, South Carolina, and continued to be the property of that bank until it was extinguished, long after its maturity, by the defendants paying it in full to the said bank on the twenty-seventh January, 1866.

There was a verdict of a jury and judgment of the court *a qua* in favor of the defendants, and the plaintiffs have taken this appeal.

During the late war, we gather from the evidence that the assets of the State Bank of Charleston were removed for safety to Camden, South Carolina. In February, 1865, as General Sherman was marching through South Carolina, and two days before he captured Columbia, the assets of the bank (among them the bill of exchange in controversy) were packed in a box and carried off from Camden by the cashier and his brother. Three days after the taking of Columbia, these per- .

sons, endeavoring to escape with the property of the bank and many valuables besides, were overtaken and despoiled of the whole by an armed force belonging to the Fifteenth Army Corps, United States Army, under command of General Logan, the soldiers taking forcible possession of the box, breaking it open and destroying part of its contents and carrying off the remainder.

There is nothing that we find showing how or when R. W. Smith, now deceased, the former husband of Mrs. Mumford and father of the minor, came possessed of the bill sued upon, or how the plaintiffs came by it. They seem to consider that the naked possession of the instrument suffices to enable them to recover. The defendants set up specially that the State Bank of South Carolina, to whom they paid the amount of the bill, was the first and only holder for value; that it never parted with its title or ownership, and that it lost its possession by unlawful violence long after the maturity of the paper. They specially deny any legal title in the plaintiffs, or that they or those they derived it from ever gave value for it.

This case is warmly contested, and numerous authorities are invoked by each party. The plaintiffs show that the alleged settlement of the defendants with the Bank of Charleston was long subsequent to their knowledge of the plaintiffs' possession of the bill and the demand of the latter on defendants for its payment. This is known to have taken place in September, 1865, while the payment to the bank by the defendants did not occur until twenty-seventh of January following. We think the fact that the plaintiffs acquired the instrument after its maturity must determine the case against them. The rule seems to admit of no exception that a party taking a bill or note after its maturity, takes it subject to all the equities and exceptions that might exist between the original parties. It is a principle of the commercial law that the bare fact that a negotiable instrument is unpaid at its maturity, is a circumstance sufficient to raise the presumption of fraud, and that there exists some valid legal reason why it was not paid. The law of merchants being the law of honor, all bills and notes, the instruments of commercial transactions, it is presumed, will be promptly paid when they become due. A negotiable instrument unpaid at its maturity shows upon its face that it was dishonored, and a person who takes it can not be allowed to claim the privilege of a *bona fide* holder without notice. The plaintiff relies strongly on the authority of the case of Murray *v.* Lardner, 2 Wallace 118. But we do not see how it covers the case at bar. In Murray *v.* Lardner the controversy was between a party who in good faith had bought, in the regular course of business for their full market value, three coupon bonds of the Camden and Amboy Railroad Company, not due, as it seems from the tenor of the

decision, payable to bearer, and the party from whom they had been stolen. The court seems to have assimilated the bonds to ordinary commercial paper, and to decide that they are subject to the law of commercial paper. Speaking of the bonds in that case the court says: "The possession of such paper carries the title with it to the holder. The possession and title are one and inseparable. The party who takes it before due for a valuable consideration, without knowledge of any defect of title and in good faith, holds it by a title valid against all the world." We are referred to no case where the original holder had been deprived of his possession after maturity. It is clear the plaintiffs acquired the bill long after its maturity. The circumstances under which the bank was deprived of its possession, preclude the inference that the captors by the rules of war acquired a legal title. The want of title in any of the parties acquiring the instrument after its maturity, could, therefore, be set up by the defendants against the holder. We conclude that the defense is made out.

It is therefore ordered that the judgment of the district court be affirmed with costs.

Rehearing refused.