BRUNOT, Justice.
 

 This is a suit upon a promissory note, of which the Amite Bank & Trust Company became the holder by virtue of a transfer made to said bank by the Security Bank of Amite, pursuant to the provisions of section 3 of Act No. 193 of 1910. The note is dated May 1, 1929. It is for $7,000, with 8 per cent, per annum interest thereon from maturity and 10 per cent, of the principal and interest as attorney’s fees. It is payable to the Security Bank of Amite six months after its date. It was signed and issued by the defendant company, acting through its president, Charles Weinberger, and it was indorsed by the defendant company, by Charles Weinberger and by Nicholas G. Carbajal. The note is subject to a credit of $350, paid January 25, 1930. Charles Weinberger, one of the indorsers, is not made a defendant. The prayer of the petition is for service upon and judgment against the Standard Box & Veneer Company, Inc., and Nicholas G. Carbajal, in solido, for the princi
 
 *957
 
 pal sum, interest, and attorney’s fees claimed, and for costs.
 

 The Standard Box & Veneer Company, Inc., made no defense to the suit. Nicholas 6. Carbajal answered the petition, pleading compensation and set-off, and, as plaintiff in reconvention, prayed, in the alternative, for judgment against the Amite Bank & Trust Company for $7,500 with legal interest thereon from November 5, 1929, and for the costs of the suit.
 

 The case was tried on the issues stated and other less important ones raised by the pleadings, and judgment was rendered thereon in favor of the plaintiff, in all respects, as prayed for in its petition, and against the plea of compensation and set-off and the alternative demand, in reconvention, of Nicholas G. Carbajal. An order of appeal from the judgment was granted both defendants, but Nicholas G. Carbajal, alone, perfected an appeal therefrom. The transcript was filed in this court on July 30, 1931. On December 22, 1932, the Amite Bank & Trust Company transferred to the Tangipahoa Bank & Trust Company all of its assets, including its rights in this suit, and, in proper proceedings, the Tangipahoa Bank & Trust Company had itself substituted as the plaintiff herein.
 

 Nicholas G. Carbajal, in article VIII of his answer sets forth his defense with minute detail and concludes the article with his alternative demand, in reconvention. The article is lengthy but we think it is advisable to quote it:
 

 “Further answering the plaintiff’s petition, defendant denies that, by reason of the matters and things hereinafter set forth, he is indebted unto the plaintiff or to the Security Bank, its alleged assignor, or that the plaintiff is entitled to recover of this defendant, but, on the contrary, as will be hereinafter shown he is entitled to set off in compensation, or in the alternative to recover in reconvention, a debt due him by the said Security Bank; and in this respect, defendant alleges as follows:
 

 “On or shortly prior to December 11, 1928,, Wade J. Gamier, the President of said Security Bank, called on this defendant, with whom he was on friendly relations and stated that the balance- of the Security Bank with the Interstate Trust & Banking Company and the American Bank & Trust Company, both of New Orleans, Louisiana, were lower than they should be and solicited this defendant to open an account and make a deposit in said Security Bank. Having, at the time, surplus cash on hand, and believing that a deposit with said Security Bank would be safe, and with knowledge of the fact that said Security Bank held his endorsement on a Seven Thousand ($7,000.00) Dollar note, of said Standard Box'
 
 &
 
 Veneer Company, Inc., which had been already twice renewed, and about the payment of which by the maker he had great fears, defendant agreed to make a deposit of Seventy five hundred ($7,500.00) Dollars, in said Security Bank and authorized said Gamier, in behalf of said bank, to draw a draft or drafts on him aggregating that amount, to be deposited in said Security Bank to the credit of this defendant.. Accordingly, on the 11th day of December, 192S, Security Bank, through said Wade J. Gamier, its President, drew a draft on this defendant,• through the American Bank & Trust
 
 *959
 
 Company for the sum of Thirty five hundred ($3,500.00) Dollars, which said draft was paid by this defendant on December 13 th, 1928, and the proceeds thereof, so this defendant is informed and believes and alleges, were credited to the Security Bank’s account with said American Bank & Trust Company, and on the same date,, to-wit: December 11th, 1928, said Security Bank, through Wade J. Gamier its President, drew a draft on this defendant through the Interstate Trust & Banking Company for Four Thousand ($4,-000.00) Dollars, which said draft was paid by this defendant December 13th, 1928, and on information and belief he alleges that the proceeds thereof were credited to Security Bank’s account in said Interstate Trust & Banking Company, making a total of Seventy five hundred ($7,500.00) Dollars deposited by this defendant with said Security Bank, in accordance with the foregoing arrangement.
 

 “On November 1st, 1929, the last renewal of said note of Standard Box & Veneer Company, Inc., which is the note presently sued on, matured and remained, unpaid, 4and, notwithstanding the fact that this defendant had on deposit with said Security Bank, then holder and owner of said note, more than sufficient to protect the payment of said note, which deposit under the terms of said note, said bank had the right to apply to the payment and discharge of this defendant’s liability as endorser, nevertheless, on or about November 5th, 1929, said Security Bank drew a draft on this defendant in an amount called for by said note, to which said draft said note was attached, and through Gabriel Fernandez, Notary Public, demanded payment thereof, and upon this defendant refusing to pay' said draft, protested the same as will appear by a certified copy of said protest annexed hereto and made part hereof.
 

 “That upon the same date to-wit: November 5th, 1929, this defendant wrote said Security Bank a letter of protest against the presentation of said draft, and the defendant for payment thereof made upon him, and called upon said bank to apply his said deposit with said bank toward the satisfaction of his liability as endorser of said note and demanded the return to him of the difference to-wit: approximately the sum of Five Hundred ($500.00) Dollars and of said note. Thereupon there ensued between this defendant and the Security Bank correspondence relative to the matter and not until November 16th,. 1929,,was defendant informed, or had any knowledge that his said deposit had been misapplied by said bank, and had been used for the redemption of certain obligations of said bank, of which this defendant had no knowledge, and with which he had no concern, and he has recently discovered that a part of his deposit was misapplied by said bank to the personal account of Wade J. Gamier.
 

 “Defendant is. informed and believes and therefore alleges that long after the maturity of said note and while said note was still owned, possessed and controlled by the Security Bank, some kind of an arrangement (the exact details of which this defendant has no accurate knowledge, but which will be shown on the trial of this cause) was made between the Security Bank and the Amite Bank & Trust Company whereby the plaintiff. Amite Bank & Trust Company took over
 
 *961
 
 aE the business and assets of said Security Bank and assumed or guaranteed the liabilities of said Security Bank as in law it was in such circumstances compelled to do; and undertook the collection and realization of any surplus assets for and in behalf of said Security Bank. For lack of information this defendant is unable to state whether or not said arrangement between said Banks was in accordance with law, but avers that in the circumstances, if said agreement was not in accordance with the provisions of Section 3 of Act 193 of 1910, same is not binding so far as this defendant, a creditor of said Security Bank is concerned and the plaintiff is accountable and liable to defendant in the premises for said deposit; that defendant reserves the right to require the production of said agreement on the trial of this cause, and, if through lack of information, he has not correctly stated the contents of said document that he shall be permitted to amend his answer herein to conform to the facts.
 

 “That in the circumstances this defendant has the right in law to set off as against the plaintiff’s claim the amount of the indebtedness due him by the Security Bank as aforesaid and he will accordingly so pray.
 

 “In the event that this defendant, for any reason be not permitted to set off said debt in compensation against the liability as endorser aforesaid, then, in the alternative this defendant, assuming the position of plaintiff in reconvention, alleges that he is entitled to judgment against the Amite Bank & Trust Company in the full sum of Seventy Five Hundred ($7,500.00) Dollars, with legal interest thereon from the 5th day of November, 3929, until paid and with all costs of this suit.”
 

 We have read the record and have reached the conclusion that the case presents two questions for decision: One, a question of law and'the other a question of fact. First, did the note sued upon pass from the Security Bank to the Amite Bank & Trust Company free from the equities the appellant could have pleaded against the original holder? Second, did the appellant have a deposit in the Security Bank of Amite at the time the note matured that could have been used as an offset against the note? We will confine our inquiry to these two questions, for the obvious reason that the decision of them will dispose of the case.
 

 The holder in due course, of a negotiable instrument, that is complete and regular upon its face, is one who has taken the instrument before its maturity. Even where a demand note is acquired an unreasonable length of time after the date of its issue, the holder of it is not deemed a holder in due course. Act No. 64 of 1904.
 

 The note sued upon passed to the Amite Bank & Trust Company on November 30, 1929 (Trans, p. 27), thirty days after its maturity date. The plaintiff was, therefore, not a holder in due course, but held subject to the equities the maker or indorsers might have pleaded against the original owner, the Security Bank.
 

 “The holder of overdue negotiable paper takes it subject to all equities and defenses between the original parties. The fact that
 
 *963
 
 a bill or note is in circulation after its real or apparent maturity is of itself sufficient to put a transferee upon his inquiry;- and should he take it under such circumstances, he acquires no better title than his immediate transferrer may have had, and holds subject to all equities and defenses available against the latter.” Am.
 
 &
 
 Eng. Eney. of Law, Vol. 4, p. 312, and the decisions there cited.
 

 Included in the said citations are the following Louisiana cases: Whitwell v. Crehore, 8 La. 542, 28 Am. Dec. 141; Davis v. Bradley, 26 La. Ann. 555; Butler v. Murison, 18 La. Ann. 363; Lanata v. Bayhi, 31 La. Ann. 229; Henderson v. Case, 31 La. Ann. 215; Metropolitan Bank v. Bouny, 42 La. Ann. 439, 7 So. 586; Coste’s Succession, 43 La. Ann. 144, 9 So. 62.
 

 With respect to the second question, the record discloses that the* appellant was not and never was indebted to the Security Bank in any sum except as to his contingent liability to that bank as one of the indorsers of the note sued upon. It also shows that he was not financially interested in or otherwise concerned with the affairs of the bank. It is not denied that prior to the maturity of the note, appellant paid the two drafts drawn upon him by the Security Bank. These drafts were drawn and paid pursuant to an agreement reached between the president of the Security Bank and the appellant. The total ■sum of the drafts thus paid was $7,500, a sum $500 in excess of the face value of the note on the date of its maturity. The appellant . testified to the correctness of the averments made in article Till of the answer, quoted supra. In this connection we quote two letters which we think are very significant. The first is a letter from Mr. Carbajal to Mr. Gamier, president of the Security Bank, and the other is the latter’s reply thereto:
 

 “Nicholas J. Carbajal, Attorney at Law ' Hibernia Bank Building,
 

 New Orleans, La.
 

 “November 5th, 1929.
 

 “Mr. Wade Gamier, President, Security Bank, Amite, La.
 

 “Dear sir: I was amazed today when Mr. Gabriel Fernandez a Notary for the Interstate Bank presented me with a draft for payment or protest drawn on me by your bank through the Interstate Bank for $7,-000.00 to which a note of the Standard Box & Veneer Company of Hammond, La., was attached.
 

 “You should have presented this note to the makers for payment or protest, if protest was necessary, and not to me. However, inasmuch as I am an indorser on this note, I would thank you to send the note to me so that I may proceed against the makers of this note.
 

 “You will recall that on December 13th, 1928, I authorized your bank to draw on me for $7,500.00 to be placed to my credit with your bank. I paid a draft through the Interstate Bank on said date for $4,000.00 and another one on the same date for $3,500.-00 making $7,500.00 on deposit to my credit with your bank. You are hereby authorized to cancel my credit in the amount of $7,000.-00 in liquidation to this note that you are to return to me and please send me a cashiers
 
 *965
 
 check for $500.00 to close out my account with your bank.
 

 “Your prompt attention in this matter will be greatly appreciated.
 

 “Yours very truly,
 

 “Nicholas G. Carbajal.”
 

 “Amite, Louisiana, November 14th, 1929.
 

 “Mr. Nicholas G. Carbajal, Attorney at Law, Hibernia Bank Building, New Orleans, Louisiana.
 

 “My dear Mr. Carbajal: Replying to your letter dated November 5th, 1929, would advise that the reason I have not replied to this letter sooner was that I thought it would be adjusted between yourself and Mr. Weinberger by this time. However, the matter has again been called to my attention this day by the bank and it therefore becomes necessary that I state my position in the matter.
 

 “Referring to the last paragraph of your letter, I do recall that on or about December 13th, 1928, I personally drew a draft on you for $7,500.00, whether this was in the form of one or two drafts I do not remember, but the amount I think is correct, applying this draft which was drawn by myself in accordance with the understanding had with yourself, myself and Mr. Weinberger, issued Time Certificates of Deposit, which were delivered and which .have long since been paid by this bank.
 

 “I regret very much that this note was protested as the evening I was in town I took it up with Mr. Hogan and requested that he kindly hold the same over, which he stated he would do. I sincerely trust that you will be able to get this matter straightened out and with regards I am.
 

 “Very truly yours,
 

 “Wade J. Gamier, President.”
 

 It is made to appear that some of the money realized from the drafts paid by the appellant, over and above the cost of collection, did not go to the credit of the Security Bank, but in the agreement with Mr. Carbajal, Mr. Gamier represented the bank, and the drains were drawn for the account of the' bank. These and other facts disclosed by the evidence, documentary and oral, lead us, with reasonable certainty, to the conclusion that the said agreement contemplated the deposit by Mr. Carbajal of $7,500 in the Security Bank of Amite, to be applied to the payment of the note sued upon in the event the maker defaulted in the payment thereof.
 

 Counsel for appellee contend that the conclusions of the trial judge with respect to the credibility of the witnesses should be given great weight. That is the rule, but where documentary evidence corroborates the statements of one witness as against the uncorroborated statements of another, the uncorroborated testimony is held to be false or unconsciously erroneous. That is the situation we find in this case with respect to the proof offered to establish the agreement whereby Mr. Carbajal honored the drafts drawn.upon him by the president of the Security Bank and applied by the latter, in part, to the payment of that bank’s obligations. The appellant has not shown the actual entry of the alleged deposit on the books
 
 *967
 
 of the bank, but he sought by subpoena duces tecum to cause the production of the records which would show the existence or non-existence of such entry. The particular records called for were not produced, and Mr. Patenotte, assistant cashier of the Amite Bank & Trust Company, testified that he did not produce the schedules because he did not find them. Under such circumstances, the legal presumption that naturally follows the nonproduction of documents in the custody of an adversary, without definitely establishing their loss or destruction, is well nigh destructive of the contention that the deposit was not made as claimed by the appellant.
 

 We might mention other incidental matters, of more or less relevancy, here, but it would serve no useful purpose to do so. We might remark, however, that the agreement, which we find is established by a reasonable preponderance of the evidence, imposed upon Security Bank the duty of charging the face value of the note to the applicant’s deposit in the event the maker failed to pay it at its maturity.
 

 Por the reasons stated, the appellant’s plea in compensation and set-off should have been maintained, and, as appellant’s demand in reconvention is made in the alternative only, it should not be adjudged. It is therefore decreed that the judgment appealed from is avoided and reversed and Nicholas G. Carbajal’s plea in compensation and set-off is maintained and this suit is dismissed, the costs in both courts to be paid by the appellee.