## RUTLEDGE v. DODSON.

### No. 6022.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 7, 1940.

Cleveland Dear, of Alexandria, and Philo Coco, of Marksville, for appellant.

White, Holloman & White, of Alexandria, for appellee.

HAMITER, Judge.

Defendant, George Dodson, on the 24th day of January, 1930, signed a promissory

note for $1,000, bearing eight per cent interest from date and ten per cent contingent attorney's fees, and payable January 24, 1931. The payee named therein was Clint Tanner. Executed simultaneously with the instrument, and as security therefor, was an act of mortgage affecting property of the maker located in Avoyelles Parish, Louisiana. The subsequent foreclosure of a pre-existing mortgage on the property, however, destroyed such security.

Clint Tanner, the payee and possessor of the note, died September 11, 1934, in the state of California. No children or ascendants survived him. On his death the instrument passed into the hands of his sister, Laura Hall, with whom he was then visiting. About one year later she forwarded it to his widow, LeEsther Tanner, who lived in Cheneyville, Louisiana.

In the fall of 1937, the widow transferred the note to J. M. Rutledge. In addition to the endorsement evidencing the transfer, the back of the instrument reveals the following notations: "Received on October 29, 1934, the sum of $30.00;" "Received on October 25, 1936, the sum of $20.00."

Rutledge, on December 14, 1937, instituted this suit against the maker, George Dodson, alleging that he is the holder and owner of the note for value and in due course, and praying for judgment for the principal amount of $1,000, with interest and attorney's fees, less the alleged and above-described credits of $30 and $20, respectively.

The defendant admits in his answer to the petition that he executed the note. He denies, however, that plaintiff is the owner thereof for value and in due course. Further answering, he avers that the instrument "was an accommodation and not supported by any valuable consideration; that the said Clint Tanner, now deceased, knew this to be a fact and at no time pressed or demanded payment from your respondent who, until recently, believed that said note had been misplaced or destroyed." It is also denied "that any credits were paid on said note as alleged therein because there was no obligation on the part of your respondent to pay the same."

Following the trial of the case on the merits and its submission, but before a decision, defendant specially pleaded the prescription of five years liberandi causa. Thereafter, the court overruled the plea of prescription and rendered judgment in favor of plaintiff in accordance with his prayer. This appeal by defendant was later perfected.

Three contentions are offered in connection with and under the defense to the action. They are, (1) that the note was obtained by plaintiff after its maturity and, therefore, the showing of all equities existing between the maker and payee is permissible; (2) that the maker received no consideration for his execution of the note, and plaintiff paid nothing for its transfer to him; and (3) that the prescription of five years has destroyed the note's efficacy.

■ Defendant was entitled to urge in this cause, as he contends and as the district court held, all equities and defenses that he might have asserted against the payee of the note, Clint Tanner. The reason for this is that plaintiff did not become a holder of the note until after its maturity. Act No. 64 of 1904; Amite Bank & Trust Co. v. Standard Box & Veneer Co., Inc., et al., 177 La. 954, 149 So. 532.

■ The second contention, above outlined, is predicated on the conflicting testimony of a number of witnesses and involves solely a question of fact. All of the proof in the record has been closely and carefully studied, and we are unable to say that the trial judge, who was privileged to observe the witnesses and their demeanor as they testified, manifestly erred in resolving the conflicts in favor of plaintiff. His written opinion adequately and correctly analyzes the evidence, which analysis, together with the conclusions thereon, is as follows:

"Plaintiff testified that he acquired the note from LeEsther Tanner, in 1937, by paying her $500 in cash for same, and received delivery of the note from her, with her endorsement as shown thereon.

"LeEsther Tanner testified that she is the surviving widow in community of Clint Tanner, who died on September 11, 1934, in California, where he had gone for his health; that there was no issue of their marriage; that she was present in Marksville with her husband when the note was executed by the defendant; that the note was given for a loan of $1,000 extended to the defendant, $500 of which amount was put up by her husband and $500 by herself; that nothing whatever was said about the note being given as an accommodation, but that it was given to secure and as repre-

senting the loan of the $1,000 extended and paid over to defendant at the time of its execution.

"Upon being questioned as to how she obtained the $500 which she states she furnished, she testified that she had saved it up from money she had received from teaching school; that she had taught school for a number of years before and subsequent to her marriage, receiving $48.50 per month for her services; that her husband had saved up the $500 which he advanced from wages he had received at public works throughout a number of years.

"She also testified that her husband went to his sister's in California on account of his health; that he took the note with him; that soon after his death she received from Clint's sister, Laura Hall, $30 which had been sent to Laura by R. L. Dodson, son of defendant, as a payment on the note for defendant, and that she placed same as a credit thereon; that later she received $20 additional, paid by R. L. Dodson as a payment, which amount she likewise placed as a credit on the note; that this last payment was brought by R. L. Dodson to her home and paid to her as a credit for his father on the note. LeEsther's mother, Estell Pool, with whom LeEsther lived at the time, near Cheneyville, La., testified that she was present when R. L. Dodson brought the $20 and paid it to LeEsther on her porch, and further, that Dodson came to her house last fall and told LeEsther that he would pay the balance of the note when he sold cotton. Estell Pool testified further that she knew it to be a fact that her daughter did have $500 which she had saved up from teaching school.

"Leroy Brown testified that he was present on the occasion when R. L. Dodson brought the $20 and saw him pay same to LeEsther Tanner at her mother's home.

"Laura Hall, sister of Clint Tanner, and residing in California, whose testimony was taken under commission, testified that Clint had been at her home in California three years prior to his death; that Clint had the Dodson note with him; that she kept the note for some time after Clint's death and then sent it to LeEsther Tanner 'to see if she could get anything on it.' She states that she received $30 from R. L. Dodson, son of the defendant, George Dodson, Sr., but that she spent the $30; that she received the $30 on the note.

"It will be here noted that LeEsther Tanner testified that Laura sent her the $30.

Laura's testimony, however, is that she received it from Dodson on the note, which would support the claim that the amount was paid by Dodson as a payment on the note. Besides, Dodson's own letter which he wrote to Laura in California (which letter is filed in evidence) says, 'The Thirty Dollars I sent you if you *creted* on the note would be just like renewing it. You *kneed* not *wory* about it, it O. K. We could not pay anything because crops is short and just can live, but are *planing* this fall to do *someting* for you. Yours truly, R. L. Dodson.'

"It is admitted that this R. L. Dodson, son of the defendant, had all the time been representing his father in doing what he did regarding making the payments and promising to pay on the note. His authority to act for his father is not questioned or denied by his father. The reason for the son's acts was that his father was quite old and unable to transact the business himself.

"The son's testimony to the effect that when he sent the $30 to Laura he meant to contribute that much as a gift toward paying for a tombstone to be placed on Clint Tanner's grave, and not as a payment on the note, cannot be believed, in view of his own letter stating to the contrary. Neither can the court believe his testimony wherein he states that when he gave LeEsther Tanner the $20 he meant it as nothing more than a gift. His explanations regarding the execution of the note, and denial of any actual giving of the $1,000, or any other sum, by Tanner, or his wife, to defendant, are entirely unsatisfactory. They are unreasonable and inconsistent.

"Considering the testimony as a whole, the court feels confident that the $1,000 was actually advanced by Tanner and his wife to defendant, just as LeEsther Tanner testified. She appears to be telling an honest, truthful and straightforward account of what actually happened. Her manner and demeanor on the witness stand so indicates. R. L. Dodson appeared to hesitate, to be uncertain, and laboring for words to explain himself, and not at all satisfactory to the court. The court is of the firm opinion that Clint Tanner did in fact extend a loan of $1,000 to defendant, just as the note itself indicates; and that the two payments of $30 and $20 were actually and in fact made on the note as indicated by the credits given for same. The fact that plaintiff gave $500 to LeEsther

Tanner for the note and, therefore, acquired ownership of same, as alleged and testified to by plaintiff and by LeEsther Tanner, has not seriously been controverted by defendant."

■ The current of prescription was interrupted by the above-mentioned payment of $30 on October 29, 1934, and by the acknowledgment of the indebtedness in a letter of date February 25, 1935. These incidents occurred within five years after the note's maturity. Consequently, the plea of prescription was correctly overruled.

No error is apparent in the judgment appealed from, and it is affirmed.